## 67. GLENN v. WESTERN UNION TELEGRAPH COMPANY.

1. As a wife can not maintain an action to recover the earnings of her husband, it follows that she can not recover damages for wages or salary he might have earned but for a defendant's tort or negligence. Consequently an ˙allegation that "by reason of defendant's negligence aforesaid, she was specially injured and damaged . . the amount ˙of his salary for 12½ months, as a member of the police force, which her husband would have received and contributed to the support of his family . . but for the defendant's negligence aforesaid," was properly stricken on demurrer.

2. Under the decisions in *Chapman* v. *Western Union Telegraph Company*, 88 *Ga.* 763, and *Giddens* v. *Western Union Telegraph Company*, 111 *Ga.* 824, there can be no recovery in this State for mere mental pain and anguish, and this court is bound by these decisions. This court, however, does not, on principle, approve the doctrine therein, but yields to these decisions only because by law it is obliged so to do, and respectfully suggests legislation upon this subject.

3. It was error to sustain a general demurrer to, and dismiss, a petition which set forth a breach of contract implied from public duty on the part of defendant and which, if proved, would entitle the plaintiff to recover nominal damages, if no more.

Action for damages, from city court of Macon—Judge Hodges. January 6, 1906.

Argued February 6,—Decided March 2,˙1907.

*Nottingham & McClellan,* for plaintiff.

*Joseph H. Hall, Warren Roberts,* for defendant.

RUSSELL, J. The plaintiff in error filed the following petition: "Mattie J. Glenn, hereinafter designated as plaintiff, against the Western Union Telegraph Company, hereinafter designated as defendant, brings this complaint, and to this honorable court respectfully showeth as follows, to wit: (1) Defendant is a corporation engaged in the operation of a system of telegraph lines, through various sections of this country, embracing, among other fields covered, the territory in, through, and from the cities of Macon, State of Georgia, to Memphis, State of Tennessee; and was such corporation and so engaged on the occasion and ˙dates hereinafter named. (2) The business of defendant as it so was on the dates hereinafter specified is the immediate transmission and delivery of intelligence, from point to point on its various lines, by electricity; said defendant holding itself out to the public as undertaking, for hire at such rates and charges as it fixed,

to promptly transmit and deliver such messages as may be delivered to it. (3) Defendant is and was, on dates and occasions hereinafter named, conducting its said business in said county of Bibb, State of Georgia aforesaid, and has, and on said dates and occasions had in said State and county an agent, an agency, and a place of business. (4) Defendant has injured and damaged plaintiff in the full sum and amount of three thousand dollars, in manner and form and by reason of facts hereinafter set forth, for that: (5) For many years prior to the 18th day of July, in the year 1903, plaintiff, together with her husband, R. E. Glenn, her children, and her mother, was a resident citizen of the city of Macon aforesaid, where her said family lived happily, being lovingly provided for by her said husband, his only source of revenue being his position as a member of the police force of said city, at a monthly salary of seventy dollars; said income being the only means of living possessed by said family. (6) On said last named date her said husband, in a remarkable and unusual spirit of anger, left his home and family; and for a period of about nine months remained so absented. (7) Two days after her said husband's departure, plaintiff received through defendant, by its messenger boy, a telegram from her husband, of which the following is a copy: 'Memphis, Tenn., July 20, 1903. Mrs. R. E. Glenn, 202 Cole St., Macon, Ga. Have just gotten right see Mayor about job, answer at my expense care Western Union Telegraph Co. R. E. Glenn. 2:40 p. m.' (8) On the envelope enclosing said message was written by defendant's agent in said Macon, Ga., these words: 'Please send reply by bearer.' (9) Plaintiff then and there immediately penned the following reply to her husband's said telegram: 'Macon, Ga. July 20, 1903. R. E. Glenn, care Western Union Telegraph Co., Memphis, Tenn. Job all right. Moseley just left and told me so. Been in bed two days. Thank God you are coming. Hun.' (10) Plaintiff, having ascertained that her said husband's said position on the police force was still open for him, wrote the above message, as a reply to said message received from him, gave it to the bearing messenger boy, as instructed, to be delivered to the office and agent of defendant in said city of Macon, for transmission to her said husband. (11) Plaintiff confidently expected her said husband to immediately return home upon receipt of her said message

answering his; but as the days wore on, and after her husband, as she has since learned, had left Memphis in despair of any reconciliation with her, and hopeless of recovering his said position on the police force, to her consternation and horror she discovered that defendant had negligently failed to transmit her said message within a reasonable time, and in time to reach her said husband while he was yet in the city of Memphis, and in fact had utterly failed to transmit, or even start said message from said Macon office. (12) Long thereafter, some nine months, plaintiff, after having vainly inquired by letters, telegrams, and otherwise, for the whereabouts of her said husband, found that he was in Fort Worth, Texas, where, in the month of March, 1904, she was enabled to reach him with a letter. (13) As soon as her said husband received her letter, and as soon as he could recover from an illness that was then upon him, he promptly returned to his home and family in the said city of Macon, and in a few months thereafter resumed his position on the police force, as aforesaid. (14) Had defendant received her said message he would have promptly returned to his home, family, and position. (15) After her husband's final return, plaintiff learned for the first time the exact condition of affairs which had for so long cruelly separated her husband from his home and family; learned, and here charges, that for several days after sending his said message to her, to wit, from Monday, July 20, 1903, to the Thursday following, her said husband had literally haunted the office and agency of defendant in the said city of Memphis, visiting same several times day and night, vainly inquiring for an answer to his said message, for which he had prepaid the charges, and finally, in despair of both reconciliation with her and recovering his position in said city of Macon, had gone to other parts of the country, in search of work. (16) Plaintiff here charges defendant with negligence in failing to transmit her said message to her husband, and charges that said negligence was the proximate cause of depriving her of the companionship, protection, and support which her said husband afforded her and her family when with them. (17) Plaintiff charges that the negligence of defendant aforesaid was the direct and proximate cause of her husband's failing to return to his home and family, and his failing to have and hold his said position on the police force of Macon, from the

said 20th day of July, 1903, to about the first part of August, 1904, when he was restored to his said position. (18) Plaintiff shows that the conduct of defendant, in failing to transmit her said message, which was delivered to defendant about 3 p. m. on the said 20th day of July, 1903, was attended with aggravating circumstances, for which she asks exemplary damages, in addition to the general and special damages she is entitled to recover, under the law and facts. (19) Plaintiff shows that the circumstances show that defendant was abundantly put upon notice of the purpose and importance of her message, both to her husband and herself, and submits, as part of the facts bringing home said notice to defendant, the prepayment by her husband of the charge of transmitting her said answer; his information to defendant's agent at Memphis, at the time, of its importance, the message to her on envelope as aforesaid, and the very wording of her message, as well as the wording of both her husband's and her message. (20) Plaintiff shows that because of the negligent conduct of defendant, she was forced to endure all the pain and humiliation of an enforced separation from her husband for the long period of time aforesaid, was forced to endure the hardships incident to the withdrawal of his support and his protection of his family, and to endure many other painful things necessarily incident to such a condition of affairs. (21) By reason of this absence of her husband, brought about by defendant's negligence as aforesaid, plaintiff was forced to work and struggle to furnish to herself and family that provision and maintenance always theretofore afforded by her husband. Plaintiff, being unused to work of the character she was forced to resort to, in her distressing condition necessarily suffered great humiliation from the bare fact of the necessity. (22) In the effort to properly provide for her children during said absence of their father, she was forced to live for a time separate and apart from them, and was thus deprived not only of the presence, companionship, and comfort of her husband, but of that of her children as well. (23) The negligent conduct of defendant aforesaid placed plaintiff in the false and humiliating attitude of a deserted wife, and brought upon her the usual suspicion and unkind things inseparably incident to so unfortunate a condition. (24) During said absence of her husband, by reason of defendant's negligence aforesaid, plain-

tiff was forced to give up her home, in her efforts to provide for her family without the necessary assistance of her husband. (25) Plaintiff submits that by reason of defendant's negligence aforesaid, she was specially injured and damaged in the sum of eight hundred and seventy-five dollars, the same being the amount of his salary for 12½ months, as a member of the police force, which her husband would have received and contributed to the support of his family, from July 20, 1903, to about August 1, 1904, but for the defendant's negligence aforesaid. (26) Plaintiff can not undertake to describe the mental anguish and suffering endured by her, during the said exile of her husband, brought about by defendant's negligence aforesaid. (27) Wherefore plaintiff says that defendant has injured and damaged her in the sum of three thousand dollars, for which she prays the judgment of the court, and to that end prays process requiring defendant to appear at the next term of this court to answer this complaint."

The defendant company demurred as follows: (1) Said petition sets forth no cause of action against this defendant. The damages claimed do not flow from, nor are they immediately connected with, any act of negligence alleged on the part of this defendant. (2) Defendant demurs specially to the twenty-fifth paragraph of said petition, in that it sets forth no cause of action against this defendant, for the reason that the damages therein claimed were not suffered by the plaintiff, but by the plaintiff's husband. Upon hearing the demurrer, the judge of the city court sustained the same and dismissed the case, with judgment for costs. To this judgment the plaintiff in error, by her bill of exceptions, excepts, and assigns error, in that the court erred in not overruling the general demurrer; in not overruling the demurrer setting forth that the alleged damage did not flow from and was not connected with any alleged act of negligence of the defendant; in not overruling the demurrer to the twenty-fifth paragraph of the petition; and in dismissing plaintiff's case.

We think that the court properly sustained the demurrer to the twenty-fifth paragraph of the plaintiff's petition; for it is clear that the damage therein alleged was not sustained by her. She had no interest in the contract mentioned in that paragraph, and was not entitled to maintain an action for it. The salary of her husband as a member of the police force was due and payable to

him; and as the obligation to support wife and family is upon the husband, and not upon the wife, if it be true that the plaintiff and her family were deprived of support the right of action therefor would be in her husband only.  But we do not think that all of the damages alleged are so remote as that the general demurrer reaches all of the paragraphs of plaintiff's petition.  We are quite sure that the court should not have dismissed the petition upon the ground that it set forth no cause of action; because the allegations of the petition showed a breach of contract by the defendant, which entitled plaintiff to recover at least nominal damages.  Civil Code, §3801.  This being true, the cause should not have been dismissed.  The Supreme Court has frequently refused to reverse a judgment denying a *new trial* simply to allow plaintiff an opportunity to recover nominal damages, but such a rule has never been applied to the grant of a nonsuit, where the plaintiff was entitled to recover nominal damages.  In *Howard* v. *Dayton Coal & Iron Co.,* 94 *Ga.* 416, it was held that "the evidence showing that the plaintiff was probably entitled to recover at least nominal damages to vindicate his right, it was error to grant a nonsuit."  In this respect the same principle is applicable to the dismissal of an action on demurrer as that applied where a nonsuit has been awarded.

A declaration against a telegraph company, which alleges that the message delivered to the company for transmission was never transmitted, may be amended by striking allegations of damage which are too remote for recovery, and by inserting any new matter amplifying the plaintiff's allegations as to defendant's breach of contract or public duty.  And if the petition, after being thus amended, is consistent, and sets forth a cause of action (either as to breach of contract or breach of public duty), such a petition, subject to such amendment, should not be dismissed on general demurrer, though most of the paragraphs of this plaintiff's petition would be subject to be stricken on special demurrer thereto, under the ruling in *Chapman* v. *W. U. Tel. Co.,* 88 *Ga.* 763.  The suit in that case was brought to recover damages for mental suffering caused by the company's failure to deliver a message to the addressee.  There was also a count for the statutory penalty.  The plaintiff obtained a verdict for the penalty, but a demurrer to the counts for special damage, arising from mental

pain and anguish suffered by the plaintiff, Chapman, was sustained; and this judgment was affirmed by our Supreme Court. The effect of this decision is to relieve a telegraph company, no matter how flagrant its neglect of duty, no matter how ruthless its violation of its contract, and no matter how harrowing or aggravating may be the results, from any liability whatever, unless there be a money loss,—an injury to the person, reputation, or property of the injured party. We are bound by the decision in the *Chapman* case as precedent, but we are in no sympathy with the principle upon which it is based or the reasoning by which it is sustained. To our minds it is monstrous that you can recover damages if you sustain loss on your carload of oxen by reason of unreasonable delay or failure to deliver a message relating to this, your property, but if you are summoned to the death-bed of your mother (whose dying blessing you would not exchange for all the cattle upon a thousand hills), and a telegraph company sees fit not to send or deliver the message which might have brought you to her side, you are completely helpless. The decision in the *Chapman* case is too ultra-material for even this material age, in which the acquisition of wealth seems well-nigh the only yardstick by which individual achievement is measured. It is not only in conflict with a long line of authorities, eminently respectable and which are supported by consideration of the most mature legal reasons, but it is at variance with sound public policy.

In our opinion, mental pain and anguish should afford good basis for an action for damages, and the jury can safely be trusted to measure the amount. It is useless for us to cite the (to our mind) unanswerable argument afforded by the decisions of the courts of last resort of our sister States, but we are impressed with the necessity for legislative inquiry into this matter. We hope such definite legislative action will be taken at an early date as will entitle a citizen of this State to recover (as in other States) for mental suffering, as well as for pecuniary loss. Whether the default as to the message causes pecuniary loss or mental anguish, a party entitled to sue must be the real party in interest, and must be either a party to the contract or a beneficiary named therein. He may be a party to the contract by being either the sender whose name is signed to the message, or the principal who paid for the message, or by whose order the mes-

sage was sent; for very frequently the signer of a message is a mere agent or messenger, who is not damaged and can not recover damages. It is of course too well established for discussion that before there can be a recovery, the telegraph company must have notice that the particular result alleged as the basis of the claim was to be apprehended from delay in transmission or failure to deliver, and that there should be notice also of the beneficial interest of the particular person who claims compensation for suffering. The purposes for which telegraph companies are created can not be ignored. Where disappointment, sorrow, and anguish are the natural result of negligence, they must be held to have been contemplated by a telegraph company when its agent received the message and agreed for a stipulated compensation to promptly transmit and cause the same to be delivered. "Otherwise, in a large class of cases most grievous wrongs may be inflicted in matters as vitally affecting the welfare of individuals as in other matters to which a pecuniary value, a market price, can be fixed; and this in disregard of a duty voluntarily assumed to the public, to secure the due performance of which many privileges, not possessed by persons generally, are conferred by the State upon the offending party." Stewart *v.* W. U. Tel. Co., 66 Texas, 584. "Telegraph companies exercise and enjoy special franchises and privileges under the law; the very purpose of their organization is to furnish for compensation the means of rapid and prompt communication; its use is expensive, and is rarely resorted to except in matters of importance to the parties. Hence the resort to this mode of transmitting information should of itself be held sufficient notice to the company's agents, that, as between the sender and the party to whom sent, the message is deemed to be of some importance, unless the contrary is made known by strict information or strong implication, as time is the usual consideration that prompts parties to the use of the wire." So Relle *v.* W. U. Tel. Co., 55 Texas, 313 (40 Am. R. 805). "A telegraph company is essentially public in its duties. Without such public duties there would be neither reason for its creation nor excuse for its continued existence. In fact, being the complement of the postal service, it is one of those great public agencies so important in its nature and far reaching in its application that some of our wisest statesmen have deemed its con-

tinued ownership in private hands a menace to public interests. Hence it follows, both upon reason and authority, that the failure of a telegraph company to promptly and correctly transmit and deliver a message received by it is a breach of a public duty imposed by operation of law. In the words of a great English judge, 'A breach of this duty is a breach of the law, and for this breach an action lies, founded on the common law, which action wants not the aid of a contract to support it.'"

Were it not for the decisions in the *Chapman* and *Giddens* cases, we should unhesitatingly hold that injury to the feelings resulting from mental suffering and anguish constitute ground for general damages, recoverable under a general averment of damage, and though this doctrine of mental anguish in telegraph cases is of comparatively recent origin (having heretofore been deemed contrary to the principles of common law), it must be borne in mind that it must possess inherent merit, for the reason that it has made constant progress, in opposition to the preconceived ideas of courts and jurists. To our minds there is no good reason why mental suffering should be differently treated from physical pain. Indeed, in cases of physical injury the mental suffering is taken into view. Why should it be disregarded because it does not originate from a physical injury or is entirely disconnected from it? As remarked by Justice Lumpkin in the *Chapman* case, "On ultimate analysis, all consciousness of pain is a mental experience, and it is only by reference back to its source that one kind is distinguished as mental and another as physical." It is interesting to note how the doctrine, first announced in the cause celebre of So Relle *v.* Telegraph Co., supra, of recovery of damages for mental anguish, has extended by its acceptance by courts of the greatest erudition. The doctrine has been followed in Texas in more than fifty cases. And in Tennessee, Alabama, Kentucky, Iowa, Louisiana, Nevada, North Caroline, South Carolina, and Washington, so far as our investigation has gone, it has been expressly approved and followed. And while there has been no decision upon the question in New York, so far as telegraph companies are concerned, the Court of Appeals of New York, in the learned opinion in Gillespie *v.* Railroad Co., 178 N. Y. 347, unequivocally affirms the principle that a plaintiff can recover for purely mental suffering, without any physical

pain whatever, resulting from breach of public duty by a common carrier; and railroad and telegraph companies (considered as corporations organized for public purposes and fixed for a public use) are essentially similar in nature. It has not been decided in Georgia what a telegraph company is; three different opinions were held by the three members of the Supreme Court in *W. U. Tel. Co.* v. *Fontaine,* 58 *Ga.* 438-9; but whether a telegraph company be a common carrier (as held by Judge Jackson), a bailee (as held by Chief Justice Warner), or a corporation sui generis engaged in taking and delivering messages, "receiving orders for work and labor and executing them" (as held by Judge Bleckley), the nature and importance of its business with the public, in our opinion, demands that such a corporation should, by appropriate legislation, be required to answer for mental suffering, as well as for pecuniary loss caused by and due to the acts or omissions of its servants and agents.

The decision in the *Chapman* case was not only rendered at a time when a statutory penalty (discussed in the opinion) was of force, but it is distinguishable from the present case in several other respects, which are adverted to therein and which doubtless affected the conclusion reached. The plaintiff in this case was the sender of the message, Chapman was the party to whom the message was sent; and in discussing the various decisions upon the subject of recompense for mental anguish, Justice Samuel Lumpkin mentions, as one of the elements of difficulty in determining that case, "whether the person to whom the message is sent, as well as the sender, can recover." 88 *Ga.* 765. And again, still discussing the questions of difficulty (p. 766), he says, "some hold that the sendee also, being the beneficiary of the contract, can maintain the action for its violation." Again, it was not held in the *Chapman* case that a plaintiff could not recover nominal damages, but only that *the plaintiff in that case* could not recover them, for the express reason stated, to wit, that to give nominal damages necessarily denies any further recovery, and in that case the plaintiff already had a verdict for the penalty. And further on it is held, in express terms, that a plaintiff in such a case as this, while she can not recover for wounded feelings and mental anguish, can recover nominal damages. To quote from the opinion (p. 775): "It seems there is no public policy to be subserved

by giving damages for mental suffering as a general rule, and the law does not allow it.  But it is urged that the public occupation of telegraph companies creates between them and the public a special relation in which their responsibility is greater than that of other persons.  So much of their business and profit is derived from the acceptance of messages involving feelings only, that at first view it would seem legitimate and salutary to require them to answer in damages for any dereliction of duty in this important part of their activity.  The argument is that in the exercise of a public employment they undertake for hire to serve the feelings of their customers, and therefore ought to pay for negligent non-performance or mis-performance of this peculiar function. *This reasoning is unanswerable in so far as it proves a right of action to arise out of the breach of duty."*  This last sentence unquestionably sustains our view with regard to the error of dismissing the plaintiff's petition in response to the general demurrer.  The judge then proceeds to say that the penalty act of 1887 gives a conventional redress of some money value in lieu of mere nominal liability, thus again inferentially referring to one of the considerations which had influenced the decision in that case, to wit, that the plaintiff could not sue at once for the penalty and for nominal damages, as the nominal damages were included in the penalty and the plaintiff benefited thereby.

Unquestionably in this case, according to the allegations of the petition, the telegraph company, by receiving the dispatch, owed the plaintiff a duty the breach of which will support an action for damages. *Langley* v. *W. U. Tel. Co.,* 88 *Ga.* 778.  The damages recoverable would be controlled by the law of tort; the contract of the company (implied by acceptance of message) being merely inducement, creating the relation between sender and the company as carrier of the message, and fixing a public duty of the company.  Telegraph companies pursue a public employment, and their public duty to a special patron is raised by the contract (implied by the acceptance of the message for transmission and delivery). *Gray* v. *W. U. Tel. Co.,* 87 *Ga.* 351.  While not bound as insurers, they, as well as all common carriers, are liable for negligence.  In every breach of contract duty, nominal damages (that is to say general damages) are recoverable, and therefore the

court erred in dismissing the present case. Civil Code, §3801; *Lilly* v. *Boyd,* 72 *Ga.* 83 (1) ; *Kenny* v. *Collier,* 79 *Ga.* 743 (1, 2).

Deposit of the telegram and failure to transmit being shown, the burden would be upon the company to justify. This petition certainly could resist a general demurrer. It showed a public duty arising out of a contract to transmit the message, assumed by defendant company; it alleged a breach of that duty, growing out of the failure to transmit the message, and thereby imposed on the telegraph company the burden of showing diligence; and the breach of the duty entitled the plaintiff to recover for the tort. The petition met every requirement necessary to charge the company with notice of the relationship of the parties, as well as with actual knowledge of the vital importance of the misplaced message; and but for the ruling in the *Chapman* case, we would unhesitatingly say that if on the trial of the case the evidence sustained the allegation, the facts as alleged would justify the imposition of exemplary damages. According to the allegations of the petition there can be no doubt that the failure of the company to perform its duty was the causa causans, the proximate cause of such mental pain and anguish, as well as inconvenience, as common carriers are well-nigh universally held responsible for in our courts. But though the plaintiff may not recover this, she is entitled to recover at least nominal damages, and her petition should not have been dismissed.      *Judgment reversed.*