## 1093.   POSTAL TELEGRAPH-CABLE CO. *v.* MOSS & CO.

A stipulation in a contract for the transmission of a telegraphic message, that the telegraph company shall not be liable for damages where a claim is not presented in writing within sixty days, is a reasonable rule, which may be legally assented to by the sender of the message, and is therefore enforceable. Mere notice that a claim will be made is not compliance with a stipulation to present a claim. The claim pre-

sented should not only identify the message and state the negligence complained of, but should also set forth so clearly the nature and extent of the plaintiff's demand as to enable the telegraph company to ascertain whether it is liable, and, if liable, to be informed as to the extent of its liability.

(*a*) The filing of a suit and service thereon within sixty days may suffice as written presentation of the claim, if the averment of the petition sufficiently inform the defendant of the identity, nature, and extent of the claim.

Action for damages, from city court of Athens—Judge Cobb. February 17, 1908.

Argued May 6, 1908.—Decided February 9, 1909.

R. L. Moss & Company brought an action for damages against the Postal Telegraph-Cable Company for an alleged failure to transmit a cablegram. It appeared, from the evidence, that on November 28, 1904, the plaintiffs delivered to the Postal Telegraph-Cable Company, at Athens, Georgia, the following message for delivery to Cunningham & Hinshaw, at Liverpool, England: "Athens, Georgia. November 28, 1904. Mosshaw, Liverpool. 39th. Laparocele Lentivo Bramaputra." Interpreted this cipher message reads: "Cunningham & Hinshaw, Liverpool. Sell at the market price 300 Jan. Feb. Sell when you think advisable prices at your discretion. In force for the day only." "Mosshaw," according to the cipher code, referred to Cunningham & Hinshaw, Liverpool. "Mossbow" referred to Bower & Son, another Liverpool correspondent of the plaintiffs. In transmission the message was altered so that it read Mossbow, Liverpool, and the figures 3905 preceded the word "Laparocele," instead of the term 39th. The message reached Liverpool early in the morning of November 29, and was delivered to Bower & Son, instead of Cunningham & Hinshaw; and it was unintelligible because the word "39th" had reference to the particular cipher code which explained the meaning of the terms employed in the message, to wit, 39th edition of the cotton code. The message was not delivered to the addressees, Cunningham & Hinshaw, in an intelligible form until 3:45 o'clock p. m. of November 29, which was only fifteen minutes before the cotton exchange closed, and when, as it is insisted, it was too late to be of any service. The testimony in behalf of the plaintiffs tended to show that if the telegram had been properly transmitted and promptly delivered, it would have resulted in a sale by them to

Cunningham & Hinshaw of 300 bales of cotton at a total price of $12,761.04 net. As soon as Moss & Company learned that they had lost the sale of 300 bales of cotton (which appears to have been upon the same day that the delayed message reached Cunningham & Hinshaw) they made complaint to the assistant superintendent of the Postal Telegraph-Cable Company, by wire, as follows: "Have sustained losses yesterday and to-day account cable service. Yesterday's cable dispatched 33 minutes before close of Liverpool market, received in Liverpool after close. Last night cable delivered to wrong parties and again have missed market. We shall make claim for loss occasioned us. Do you recommend covering and claiming for difference or shall we leave transactions open? There have been several occasions for complaint of late on cable service." Four days later (December 3) Moss & Company sent to Duncan, the assistant superintendent, at Atlanta, another telegraphic message, as follows: "Pending government estimate of cotton crop renders course of market most uncertain. We insist upon instructions on cotton which erroneous delivery of cable caused failure to sell. We have done nothing in absence of instructions from you. Cotton is at risk of your company. We called at your office Wednesday to see you." Receiving no reply from the Postal Telegraph-Cable Company to this message, Moss & Company, on December 13th and 14th, sold the cotton at the ruling market price, which was lower by several points than the price at which the cotton could have been sold on November 29th. The difference between the aggregate net price at which the cotton was actually sold and the price at which the cotton would have been sold to Cunningham & Hinshaw amounted to $1,943.98; and the plaintiffs brought their suit for this amount. At the conclusion of the evidence the judge directed a verdict for the plaintiffs, for the amount claimed. The defendant moved for a new trial, upon various grounds; and, a new trial having been refused, it excepts to the judgment overruling the motion.

*Anderson, Felder, Rountree & Wilson, John J. Strickland,* for plaintiff in error. *T. S. Mell,* contra.

RUSSELL, J. (After stating the foregoing facts.)

We think that the court erred in refusing a new trial; for, in our view of the case, the direction of the verdict for the plaintiffs was wholly unwarranted. Passing over all of the assignments of

error which are dependent upon the admissibility of evidence, and pretermitting any discussion of the facts that the telegrams introduced by the plaintiffs only show the sale of 250 bales of cotton; that the grade of the cotton was not shown to be the same as that specified in the contract between the parties, and, above all, the fact that it was for the jury, and not for the court, to say whether the plaintiffs, in a bona fide effort to diminish the damages as much as possible, should have waited until December 14 to sell the cotton, instead of selling it as soon as they were informed that their contemplated sale through Cunningham & Hinshaw had been defeated by the failure to properly transmit their message, we come directly to the point which, in our judgment, precluded the plaintiffs from any recovery whatsoever, and demanded a finding in favor of the defendants. The blank upon which the cablegram was written contained the following language at the top of the paper, printed directly over the space used for writing message: "Send the following cablegram, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to." At the bottom of the front side of the message are printed the words, "The sender will please read the conditions on back and sign name and address thereon for reference." Among the stipulations of the contract, thus made a part of it, it is agreed that "this company shall not be liable in any case where the claim is not presented in writing within sixty days after the filing of the message."

The learned counsel for the defendants in error, we think, very properly classifies the instant action as one brought upon breach of contract. A contract must be implied from the acceptance of the message for delivery. *Glenn* v. *W. U. Tel. Co.,* 1 *Ga. App.* 821 (58 S. E. 83). It can not be denied that, considered as a matter of a contract, the sender of the message and the telegraph company had the right to stipulate for a qualified period of limitation. Similar stipulations have frequently been construed as reasonable rules or regulations which may be adopted by the telegraph company in the conduct of its business, and it has been held that where the sender of a message uses a blank worded similarly to the one in the record, he thereby assents to the rule and it becomes incorporated in the contract. Of course, if a telegraph company accepts for transmission a message not written upon one of its own blanks

(as, for instance, if the message be written upon a plain piece of paper), although the company might have adopted such a rule, the sender would not be bound by it, because he would not have assented to the rule as a part of the contract. On the other hand, it was ruled in *Western Union Telegraph Co.* v. *Waxelbaum*, 113 *Ga.* 1017 (39 S. E. 443, 56 L. R. A. 741), that even where the blank used was that of a different company, the sender of the message, being presumed to have read the contract, and the telegraph company having accepted it for transmission, it would be presumed that both parties adopted in that particular instance the contract of the other company. The view taken by counsel for the defendant in error, and which was evidently entertained also by the learned judge of the city court of Athens, is that the telegrams of November 29 and December 3, 1904, sent by Moss & Company to the district superintendent, complaining of loss and of inefficient service, are sufficient presentation in writing of the plaintiff's claim for damages arising from the breach of contract in the particular instance which was the basis of this suit. We can not concur in this opinion. A telegraph company has the right to propose, as a stipulation of the contract, that it shall not. be liable where the claim is not presented in writing within sixty days, and the sender of a message has the right to either assent to that condition of the contract or to decline to be bound by it. And, as stated above, if the telegraph company accepts a message without this stipulation in the contract, the fact that it may have adopted a rule to this effect will avail nothing. Of course, it is within the power of the legislature to extend the time, or even to declare the stipulation contrary to public policy. In Texas any such stipulation which fixes the period within which the plaintiff's claim for damages shall be presented at less than ninety days has been declared void, by legislative enactment. However, wherever there has been no express legislation upon the subject, such stipulations have been held to be a reasonable rule which may be adopted by a telegraph company in the conduct of its business, or at least such a condition of the contract of transmission as is not repugnant to public policy, and such a stipulation as can be legally enforced.

The only question, then, is whether the telegrams above referred to constitute an intelligible, definite claim, or are to be considered

at most as but a notice that later a claim will be presented. It is uncertain whether the message of the 29th refers to more than one cablegram which had been negligently transmitted, or to one only, and it must therefore be doubtful whether the complaint refers to the particular telegram delivered to the company for transmission to Cunningham & Hinshaw. The message of the 29th says: "Have sustained losses yesterday and to-day account cable service." It must be doubtful whether this refers to the message to Cunningham & Hinshaw, because that message says by its terms that it is limited to a day only. The permission to sell applied to one day only; and if there was loss, it resulted from the failure of the telegraph company to cause the permission to operate upon a particular day. The telegram then proceeds, "Yesterday's cable dispatched 33 minutes before close of Liverpool market, received in Liverpool after close." Is it clear that this refers to the telegram which is the basis of the present suit? If so, it does not appear from the evidence; for this telegram was dispatched at ten o'clock on the night of November 28, and was received in Liverpool on the morning of November 29, 1904, and finally delivered to the addressees at 3:45 in the afternoon, which was only 15 minutes, instead of 33 minutes, before the close of the Liverpool market. The message then proceeds to say that the senders' last night's message was delivered to the wrong parties, and that they "again missed the market," and concludes with the statement that "there have been several occasions for complaint of late on cable service." The evidence does not make it clear that the claim is confined to the message to Cunningham & Hinshaw of November 28, in regard to 300 bales of cotton; and if, after a careful comparison of this so-called claim with the evidence in the record, we are not able to say (if it be construed as a claim) that it has special reference to the particular message under investigation, how could the telegraph company, without the information now at our hands, be advised for which of the numerous messages it had transmitted for the plaintiffs it was liable? The impression naturally left by the telegrams was that the company had been remiss in several particulars, and that the plaintiffs had thereby sustained loss of some kind on two different days, and perhaps on three different transactions. Certain it is that it says, that the plaintiffs sustained losses "yesterday and to-day;" that one message was received in

Liverpool after the close of the market, and that "last night's cable" was delivered to the wrong parties. And as if to make plain that "last night's cable" was not the same one referred to as "yesterday's," the complaint in regard to the delivery of last night's message is that they ".again have missed market." This is followed by the distinct statement, "We shall make claim for loss." If this is not a distinct statement that the telegram to the superintendent was not at that time intended by the senders as the claim of loss contemplated by the contract, it is at least misleading to the company and its agents. The message of December 3 depends entirely on that of November 29. The senders (apparently assuming that the latter was a legally sufficient claim, which informed the company of the particular cotton on which Moss & Company had sustained loss) in this message insisted upon instructions on cotton which erroneous delivery of cables caused failure to sell. While this second message may possibly be sufficient to identify the message by reason of the non-delivery which Moss & Company had suffered, yet, that message having been in cipher, the company was not charged with knowledge of its contents, and could not be presumed to know anything of the amount of the claim. In *Bashinsky* v. *Western Union Tel. Co.*, 1 *Ga. App.* 761 (58 S. E. 91), we held, that "while a telegraph company is bound properly and promptly to transmit and deliver a message sent in cipher, if it undertakes to transmit the same, such company is not chargeable with knowledge of the contents and meaning of words used in sending messages in cipher, and which are purposely unintelligible except to the addressee. In such case the only presumption with which the telegraph company is chargeable is knowledge of the importance of the message." Under the contract the company had not only the right to be apprised of the particular transmission or miscarriage upon which the claim arose, but the further right to be informed of the definite claim; and certainly no waiver of this stipulation could result from its waiting in silence until the claimants, as they had promised, made the claim. It has frequently been held that the stipulation with which we are dealing can be waived; as where an oral claim for damages is investigated and refused. *Hill* v. *Western Union Tel. Co.*, 85 *Ga.* 426 (11 S. E. 874, 21 Am. St. R. 166). The refusal to pay the claim, the nature of which has been fully disclosed, dispenses with

the formality of writing. But the claim in the present instance is not only too vague and indefinite to put the defendant upon inquiry into the merits of the transaction, but inquiry is actually delayed by the plaintiffs' assurance that they will file a claim when the inquiry can properly be prosecuted.

In the leading case of Manier *v.* Western Union Telegraph Co., 94 Tenn. 442 (29 S. W. 732)—cited in W. U. Tel Co. *v.* Courtney, 113 Tenn. 482 (82 S. W. 484), and approved in Croswell on the Law of Electricity, §558—it was held, that it is not sufficient compliance with a contract, exempting a telegraph company from liability unless the claim for damages resulting from negligence in the transmission of a message shall be made within sixty days, "to notify the telegraph company of delay of the message, and probable loss, without presenting any distinct claim." The facts in the Manier case, upon the particular point, were not entirely dissimilar to those in the case at bar.    If the message in the Manier case had been promptly delivered, the plaintiffs' attorney could have taken out attachments which would have resulted in collecting the entire amount of their claim against a failing debtor. By reason of the telegraph company's negligence and delay in delivering a message, the instructions to the attorney were delayed until several other creditors had levied attachments and established a prior lien upon the debtor's property. The exact amount which Manier & Company would lose by failing to levy the first attachment as they would have done, could not be definitely ascertained until the affairs of their debtor were administered and the lien of each attachment had been determined by the court. The court could not pass upon this issue until after the expiration of the sixty days in which it was stipulated that the claim be presented, and it appears that at the time that Manier & Company notified the telegraph company that they claimed damages they did so in about the same general terms as were employed by the plaintiffs in the present case. In the Manier case no amount of loss was fixed by the claim. In the present case no amount was fixed as being the claim for loss, and in fact it appears that the loss increased (as the market was declining) after the plaintiffs notified the defendant company that they would make a claim. In the opinion in the Manier case Chief Justice Snodgrass, after treating of the reasonableness of the rule embodied in the contract, and

citing upon that subject Wolf *v.* Tel. Co., 62 Pa. 83 (1 Am. Rep. 387), Young *v.* Tel. Co., 134 N. Y. Super. Ct. 390, Express Co. *v.* Caldwell, 21 Wall. 264 (22 L. ed. 556), W. U. Tel. Co. *v.* Way, 83 Ala. 542 (4 So. 844), W. U. Tel. Co. *v.* Dougherty, 54 Ark. 221 (15 S. W. 468, 26 Am. St. R. 33), W. U. Tel. Co. *v.* Meredith, 95 Ind. 93, 94, Massengale *v.* W. U. Tel. Co. 17 Mo. App. 259, Beasley *v.* W. U. Tel. Co. (C. C.), 39 Fed. 181, and Lester *v.* W. U. Tel. Co., 84 Tex. 313 (19 S. W. 256), says: "It follows logically that, accorded the benefits of the contract and given the right to sue upon it, the addressee should be bound by it to the same extent as the sender, and we so hold. But the complainant insists that it was not required to bring this action within sixty days of the discovery of the delay and probable loss, but only within sixty days of the realization of the loss and damage which it sustained by negligent delivery. In addition to this, complainant says that it did give the defendant notice of this negligent delay of the message within sixty days, and, by so doing, imparted knowledge of probable loss and thus presented its claim. These positions are in apparent antagonism. One assumes that the plaintiff did not know of its loss and could not present its claim within sixty days, and the other that it did so. As a matter of fact it notified the defendant of the delay of the message and probable loss, but it presented no claim therefor within sixty days. The complainant is also in error in the assertion that it could not have done so. It need not have delayed, and, under this contract, could not have delayed until the termination of that suit, to present its claim for damages. It might have done so at once. It could have notified the defendant of the delay, and it claimed all resultant damages as its loss. The loss could have been stated to be whatever portion of complainant's debt was not realized under the attachment. It need not have stated a specific amount, but could have done so by claiming damages to the amount of the entire debt, less whatever could be realized in the suit, and thus presented it as a claim against the company."

While the stipulation does not look solely or primarily to affording a telegraph company an opportunity of settling the claim for damages without litigation, and is perhaps rather intended to enable such a company (which has large numbers of employees from whose acts or non-action its liability arises) to investigate the

merits of a probable loss while the transaction is fresh, still both objects can be subserved. The fact that litigation can be prevented should not, in our opinion, tend to cause the stipulation to be obnoxious. In the present instance, if Moss & Company claimed a loss on the cotton on December 3, it is possible that in the fluctuations of the cotton market prices might have advanced, and in a few days an actual profit have been realized by a sale to some one else than Cunningham & Hinshaw. As said by Chief Justice Snodgrass, the claim "need not have stated a specific amount," but the loss could have been stated to be the difference between the sum which could have been realized by a sale of the 300 bales of cotton at the price at which the cotton was contracted to be sold to Cunningham & Hinshaw and the amount for which the cotton could then be sold or what it was then worth at the lower price. The contract under which they claimed damages should at least have been identified. As said in Croswell on the Law of Electricity, §558, "in order to comply with the stipulation in question, it is not necessary for the plaintiff to set forth his claim in detail, but he must give the telegraph company such information in writing as will apprise the company of the nature of the claim." Thus it has several times been held that if the suit is brought within sixty days and the allegations are sufficiently specific, and service is effected upon the company, this will be deemed compliance with the stipulation. Mr. Croswell bases the quotation which we have used above upon the ruling in W. U. Tel. Co. *v.* Brown, 84 Texas, 54 (19 S. W. 336), in which it was held that "a notice in writing in behalf of plaintiff, delivered to the agent of the telegraph company at the place where the message was directed, and stating the amount of the claim, and that it was for damages for the non-delivery of the dispatch, and naming loss from increased price of mules and expenses incurred, was sufficient to include loss of profits upon mules contracted or sold by him, under the printed stipulation for notice thereof within sixty days, etc.," because "it showed the nature of the claim." In the present case how could the company know the nature of the claim against it, even though it was apparent that the plaintiffs claimed to have sustained loss by reason of a delayed message? Was it in reference to cotton, or some other transaction, or, if it referred to cotton, did the loss arise from failure to sell, or from

failure to purchase that commodity? The telegraph company may be informed by the use of cipher that the contents of the message are important, but it is not charged with knowledge of the meaning of the words taken from the cipher code, required to be filed in the office of the telegraph company, of which meaning the evidence in this case does not show that the company had knowledge, except as to the address.

In *Bashinsky* v. *W. U. Tel. Co.*, supra, we adverted to some of the differences between messages sent in cipher and those conveyed in the language of the country. Arrangements are often made between mercantile houses and individuals for codes of words, each word standing for a clause or phrase; and these words, though intelligible to the parties sending and receiving, are wholly unintelligible to persons not having a key. Such a telegram "conveys no information whatever to the telegraph company of the transaction to which it relates, or the consequences likely to flow from negligence in its transmission or delivery. It is therefore held in most cases that a message which is wholly unintelligible in its language because written in cipher does not render the telegraph company liable for any damage which may result from negligence in its transmission or delivery, unless information dehors the message has been given which puts the telegraph company in possession of facts relating to the real purport and object of the message, or unless some special contract as to its transmission has been made." Croswell on the Law of Electricity, § 588. See also cases cited in that section. In *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1 (14 Sup. Ct. 1098, 38 L. ed. 883), the Supreme Court of the United States held that where the message was in cipher, only nominal damages could be recovered.

We conceive, then, the true rule to be that where such stipulations as those in the present instance are embodied by the parties into a contract for the transmission of a telegraphic message, the claim must not only be in writing, but the message for the nonperformance or non-delivery or miscarriage of which damages are claimed must be identified, the negligence complained of must be stated, and the telegraph company should be fairly informed of the nature and extent of the claimant's demand. The claim itself should be filed, and not merely notice of a claim be given. W. U. Tel. Co. *v.* Courtney, 113 Tenn. 482 (82 S. W. 484); 27

J3

Am. & Eng. Enc. of Law (2d ed.), 1048; Jones on Telegraph Companies, §395; Joyce on Elec. §723; W. U. Tel. Co. *v.* Murray, 29 Tex. Civ. App. 207 (68 S. W. 550); Manier *v.* W. U. Tel. Co., 94 Tenn. 442 (29 S. W. 732).    *Judgment reversed.*