5880. WESTERN UNION TELEGRAPH CO. *v.* KNIGHT.

The petition does not set forth a cause of action, the allegations being, in substance, that in December, 1913, the plaintiff lived with her husband in Columbus, Georgia, where her husband was engaged in business; that some days prior to December 4, 1913, she went on a visit to Adel, Georgia; that she sent from there to her husband the following telegram: "Adel, Ga. Dec. 4, 1913. C. B. Knight, Rankin Hotel, Columbus, Ga. Had no letters for three days. Am anxious. Answer at once. Mrs. C. B. Knight. Collect;" that this telegram was received at the Columbus office of the company at 5:02 p. m. on the same day; that it was sent by the telegraph company to the Rankin Hotel, but was put in an envelope marked, "Paid. Pay no charges on this message;" that the clerk at the hotel received the message and was ready to pay, and would have paid the charges, had any been demanded, but no demand was made; that the telegram was delivered to her husband upon his arrival at the hotel from his office; that on the following day, December 5, the telegraph company sent from its office in Columbus, to its office in Adel, Georgia, a message as follows: "Yours 4th, Knight, sgd. same. We failed to put charges on message when message was delivered yesterday, and Mr. Knight has left town. Please try to collect again and advise. Columbus, Ga., 12/5".; that upon the arrival of this message it was delivered to Mrs. Knight, whereupon she paid the charges for her telegram of the previous day; that upon receipt of this telegram

from Columbus she became greatly disturbed, excited, and distressed by reason of the statement in it that her husband had left the city where he resided, and she suffered the most excruciating pain and agony, knowing of no reason why her husband should have left his home, no notice having been given her of such intention upon his part; that she, not knowing what else to do, went to Waycross, to the home of her husband's father, to ascertain, if possible, the whereabouts of her husband; that upon reaching Waycross she failed to get any information about her husband; that the strain upon her nervous system became too great for her to bear, and she became ill and suffered great physical as well as mental pain and anguish, and for a period of two days her sufferings were such that she took no nourishment of any kind; that prior to the time referred to she was a woman of excellent health, but the ordeal through which she passed greatly impaired her bodily health, and since that date she has never regained her normal strength and vigor; that all the bodily pain and sickness, as well as the mental anguish that she endured, was caused by the carelessness, negligence and improper conduct of the defendant, its agents, servants and employees, (1) in marking the first telegram as "paid," and (2) in sending the second telegram stating that her husband had left his home, which statement was absolutely false and without any foundation whatever; that by reason of these acts of negligence, and the false, misleading, and inexcusable statement of the telegraph company and its agents, servants, and employees, she has been injured and damaged as aforesaid to the amount of $1,000.

DECIDED APRIL 20, 1915.

Levy and claim; from city court of Fort Gaines—Judge Turnipseed. June 13, 1914.

*E. R. King,* for plaintiff in error.

*P. C. King, Rambo & Wright,* contra.

BROYLES, J. The general rule of law in this State is that damages can not be recovered for mental anguish and physical pain resulting from mere negligence, unaccompanied by any physical injury to the person or pecuniary loss. If the physical injury resulting from mental anguish is one which would be a natural and reasonable consequence of the tortious act of the defendant, or if the wrong against the plaintiff was wanton, malicious or wilful, the defendant may be held liable for the natural and directly resulting effects. As was said in *Goddard* v. *Watters,* 14 *Ga. App.* 726 (82 S. E. 306): "It appears that no recovery can be had on account of fright alone, caused by less than such gross negligence on the part of one acquainted with the condition of the plaintiff, or with the facts and circumstances surrounding the plaintiff, as would authorize the conclusion that the defendant must have known that certain definite physical injuries would naturally flow from

or follow the fright or nervous excitement brought about by him; or unless the fright resulting in physical injuries or impairment of health should have been brought about deliberately, maliciously, or wantonly, by the defendant, and through an utter disregard of the natural and probable consequences to the injured party, or from a wilful intent so to injure the party."

None of the cases cited by the learned counsel for the defendant in error are applicable to the facts in this case. Most of the cases so cited were where the feelings of passengers on railway trains or street-cars had been wounded by the insulting and malicious conduct of conductors or other agents of the defendants,—as in *Mabry* v. *City Electric Co.*, 116 *Ga.* 624 (42 S. E. 1025, 59 L. R. A. 590, 94 Am. St. R. 141), where *Chapman* v. *Western Union Telegraph Co.*, 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 L. R. A. 183), is distinguished from it. In the *Mabry* case the court said: "The case at bar, however, is based upon the wrongful commission of an overt act which in itself involved the feelings, susceptibilities, and, in a measure, the reputation, of the plaintiff; an act tending to degrade her in the estimation of other persons present at the time. The injury alleged is not the failure to carry the plaintiff to her destination, but her expulsion from the car, over her protest of her right to remain thereon." In our opinion the case at bar is controlled by the decision in the *Chapman* case, supra. In the opinion in that case the Supreme Court said: "The law protects the person and the purse. The person includes the reputation. *Johnson* v. *Bradstreet Co.*, 87 *Ga.* 79 [13 S. E. 250]. The body, reputation, and property of the citizen are not to be invaded without responsibility in damages to the sufferer. But outside of these protected spheres the law does not yet attempt to guard the peace of mind, the feelings, or the happiness of every one, by giving recovery of damages for mental anguish produced by mere negligence. There is no right, capable of enforcement by process of law, to possess or maintain without disturbance any particular condition of feeling. The law leaves feeling to be helped and vindicated by the tremendous force of sympathy. The temperaments of individuals are various and variable, and the imagination exerts a powerful and incalculable influence in injuries of this kind. There are many moral obligations too delicate and subtle to be enforced in the rude way of giving compensation for their violation. Per-

haps the feelings find as full protection as it is possible to give, in moral law and a responsive public opinion. The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries." See also *Williamson* v. *Central of Georgia R. Co.*, 127 *Ga.* 125, 131 (56 S. E. 119) ; *Dunn* v. *Western Union Tel. Co.*, 2 *Ga. App.* 845, 846 (59 S. E. 189) ; *Seifert* v. *Western Union Tel. Co.*, 129 *Ga.* 181 (58 S. E. 699, 11 L. R. A. (N. S.) 1149, 121 Am. St. R. 210).

In the *Goddard* case, supra, the petition made out a much stronger case against the defendant than does the petition in the case at bar, for in that case it was alleged that the defendant's tort was wilful and malicious, that at the time the tort was committed the plaintiff was pregnant with child, and that the defendant knew she was in this condition, and that his wrongful act (in assaulting her husband) so frightened her as to cause a great nervous shock, and, in her weak and nervous condition, was such as to prostrate her and cause great pain and suffering, and caused her to be delivered prematurely of her child—three days after the assault, and caused her much unnecessary pain and suffering, and permanently injured her. In that case the trial judge sustained a general demurrer and dismissed the petition, and this court affirmed his judgment, holding that the petition set forth no cause of action. In the case at bar there is no allegation in the petition that the defendant's tort was either wilful, wanton, or malicious.

In our opinion the mental anguish and consequent physical illness of the plaintiff was not the natural or reasonable consequence of the defendant's tort, nor could the defendant have anticipated that such a consequence would naturally or reasonably flow therefrom. The defendant's tort consisted in its false statement that the plaintiff's husband had "left town." It is manifest that this telegram or statement was not slanderous or libelous. It is no crime or disgrace for a man to "leave town." If the defendant company had stated that the plaintiff's husband had "left town with another woman," or that he had "left town to escape his creditors," or made some other such derogatory or libelous assertion about his departure from town, our ruling might be different. But the simple statement that the defendant company could not collect the charges on the plaintiff's telegram, sent to her husband "collect," because her husband "had left town," contains not the slight-

est accusation or insinuation against him of anything wrong or disreputable. We do not see how the defendant company could have anticipated that this statement, false though it was, could have caused the mental suffering and pain, and the consequent physical illness, of the plaintiff.

This case is quite different from the case of *Western Union Tel. Co.* v. *Glenn,* 1 *Ga. App.* 821 (58 S. E. 83), where it was held that it was error to sustain a general demurrer and dismiss the petition, which set forth a breach of contract implied from the public duty on the part of the defendant, and which, if proved, would have entitled the plaintiff to recover nominal damages, if no more. The suit in that case was based upon the failure of the telegraph company to transmit a telegram which it had accepted, and, in gross violation of its duty, failed to transmit. In the case at bar the telegraph company had promptly delivered the message and had committed no breach of contract, and the suit is based upon a tort committed outside of the contractual relations between the parties.

In our opinion the petition did not set forth a cause of action, and the lower court should have sustained the general demurrer and dismissed the petition.           *Judgment reversed.*