51836. FENDER v. COLONIAL STORES, INC. et al.

ARGUED FEBRUARY 4, 1976 — DECIDED FEBRUARY 18, 1976 — REHEARING DENIED MARCH 9, 1976 — 

*Ervin, McCullough & Sherrill, John A. Sherrill,* for appellant.

*Hurt, Richardson, Garner & Todd, Robert L. Todd, Greene, Buckley, DeRieux & Jones, Alfred B. Adams, III,*

*Gregory J. Digel, R. Dennis Withers,* for appellees.

DEEN, Presiding Judge.

1. The plaintiff urges several theories of recovery against the appellee-retailer in whose store the explosion occurred: Breach of warranty; violation of shopkeeper's duty to customers under Code § 105-401; and, res ipsa loquitur. It is contended that the evidence adduced at trial supported her right to recover under any or all of these theories such that the direction of a verdict in favor of the retailer was error.

A. *Warranty.* An action based on breach of warranty necessitates a showing of the existence of the warranty, the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. Official Comment 13 to Uniform Commercial Code § 2-314. In support of its directed verdict the defendant-retailer contends that the plaintiff's evidence failed to establish the existence of a warranty. Code Ann. § 109A-2—314 (1) provides in pertinent part: "Unless excluded or modified (109A-2—316), a warranty that the goods shall be merchantable is implied in a *contract for their sale* if the seller is a merchant with respect to goods of that kind . . ." (Emphasis supplied.) The retailer urges there was no warranty because at the moment of explosion the plaintiff had as yet not paid for the bottle.

The retailer argues that no title had passed on the goods; this ignores, however, the clear language of § 109A-2—314 that a warranty is implied upon a *contract* for sale and not solely upon the execution of the sale itself. Code Ann. § 109A-2—106 (1) defines "contract for sale" as "both a present sale of goods and a contract to sell goods at a future time. . ." We therefore see this issue as not one of title passing from the retailer to the consumer but one of the existence of a contract between the parties to sell goods at a future time. A contract is of course "an agreement between two or more parties for the doing or not doing of some specified thing" and requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which it can operate." Code §§ 20-101, 20-107. The plaintiff has the burden of showing

the existence of the warranty by establishing that at the time the bottle exploded there was a contract for its sale existing between herself and the retailer.

The plaintiff's evidence in this case showed that the retailer's store was of the usual "self-service" type, in which customers were supplied with carts and allowed to roam the aisles at will, selecting items from the shelves and cases and then negotiating the check-out line where the purchases are rung up on the register and the total price is paid. The plaintiff testified that she had finished her shopping and was in the physical act of placing the bottles on the counter for payment when the explosion occurred; she further testified that she was at the check-out counter to pay for her purchases.

We think this evidence sufficient to show that the retailer's act of placing the bottles on the shelf with the price stamped upon them manifested an intent to offer them for sale, the terms of the offer being that it would pass title to the customer when they were presented at the check-out counter and paid for. Likewise we think that the evidence shows that the plaintiff's act of taking physical possession of the goods with the intent to purchase them manifested an intent to accept the offer and a promise to take them to the check-out counter and to there pay for them. Under Code Ann. § 109A-2—206 (1) (a): "Unless otherwise unambiguously indicated by the language or circumstances an offer to make a contract shall be construed as inviting acceptance *in any manner and by any medium reasonable in the circumstances. . .*" (Emphasis supplied.) Placing the goods on the shelf for customer inspection and selection was clearly an offer to sell them at the stated price; the retailer did not indicate by language or circumstances that acceptance of this offer could not be accomplished by taking possession of the goods with an implied *promise* to pay for them upon check-out rather than by the actual act of exchanging money. It is equally reasonable under the terms of the offer that acceptance could occur in any one of three ways: (1) by delivering the goods to the check-out counter and paying for them; (2) by the promise to pay for the goods as evidenced by their physical delivery to the check-out counter; and (3) by the promise to deliver the goods to the

check-out counter and to pay for them there as evidenced by taking physical possession of the goods by their removal from the shelf. Under the circumstances surrounding this transaction we believe reasonable men could conclude that the plaintiff's act of taking physical possession of the goods with the intent to pay for them constituted a reasonable mode of acceptance; that by taking physical possession and delivering to the check-out counter the plaintiff promised to pay for them at the stated price and that this promise is sufficient consideration to support a contract, Code § 20-304; that a contract for the sale of the goods came into being when the plaintiff accepted the offer by taking physical possession thereof with the intent to pay for them; and that from that moment forward the implied warranties of Code Ann. § 109A-2—314 were applicable. See Seigel v. Giant Food, Inc., 20 Md. App. 611 (318 A2d 874). "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined." Code Ann. § 109A-2—204 (1) and (2).

Nor do we believe that the fact that the customer in a "self-service" store has the right to return merchandise to the shelves at any time before payment is made militates against a finding that a contract for the sale of goods has come into being before such payment. " 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. . ." Code Ann. § 109A-2—106 (3). We believe that the fact that the retailer permits the customer to "change his mind" indicates only an agreement between the parties to allow the customer to end his contract with the retailer irrespective of a breach of the agreement by the retailer. See Seigel v. Giant Food, Inc., supra.

In reaching this decision that in the context of a self-service store a contract for sale of goods may arise before payment is actually made for the goods, we are not unaware of decisions in other jurisdictions to the contrary. Loch v. Confair, 361 Pa. 158 (63 A2d 24); Lasky v.

Economy Grocery Stores, 319 Mass. 224 (65 NE2d 305); Day v. Grand Union Co., 280 App. Div. 253 (113 NYS2d 436). These cases were all decided prior to the adoption in their jurisdictions of the Uniform Commercial Code with its liberalized concept of contract formation and at a time when passage of "title" was the relevant legal prerequisite to a warranty action. It is true that the Court of Appeals of our sister state of North Carolina by discussion of the "passage of title" in a recent decision reached a similar result to that we have reached here. Gillispie v. The Great Atlantic & Pacific Tea Co., 14 N. C. App. 1 (187 SE2d 441). While we agree with the result reached in the Gillispie decision we do not agree that the question of whether a contract for sale exists is dependent upon the passage of title. We embrace rather the well-reasoned opinions of Seigel v. Giant Food, Inc., supra, and Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc., 16 VCC 340 (Md. Ct. of App., Feb. 4, 1975) to the effect that a contract of sale of goods in the self-service supermarket context may arise before payment is actually made for the goods and title passes.

The retailer urges that even if we find a warranty has arisen in this case, as we have in fact so found, that the plaintiff's evidence fails to show a breach thereof. The testimony was that the goods selected were normal in appearance, that the bottles had not struck or touched the carton or any of the bottles against any object at any time after they were removed from the shelf, but that the bottle exploded as it was being placed on the counter for check-out and that the plaintiff was injured by flying glass. "It is obvious that Coca-Cola bottles which would break under normal handling are not fit for the ordinary use for which they were intended and that the relinquishment of physical control of such a defective bottle to a consumer constitutes a breach of warranty. Thus the evidence was sufficient to show that when the bottles left the retailer's control they did not conform to the representations of the warranty of merchantability, and that this breach of the warranty was the cause of the loss sustained. Having made this *prima facie* showing appellant was entitled to have the jury pass upon the questions of whether the warranty was breached, and if

so, whether the breach caused his injury." Seigel v. Giant Food, Inc., supra.

B. *Code § 105-401 Liability*. The plaintiff was an invitee on the retailer's premises. *Higdon v. Ga. Winn-Dixie, Inc.*, 112 Ga. App. 500 (2) (145 SE2d 808). As such the retailer owed her a duty to exercise ordinary care in keeping the premises safe. The defendant was required to protect the plaintiff from hidden dangers and defects of which he (the defendant-retailer) was aware or of which he had constructive notice and to warn the plaintiff of such defects. *Coffer v. Bradshaw*, 46 Ga. App. 143 (8) (167 SE 119); *McCrory Stores Corp. v. Ahern*, 65 Ga. App. 334 (15 SE2d 797); *Day v. Trion Co.*, 56 Ga. App. 1 (192 SE 88). The plaintiff here urges that the retailer has breached this duty by offering for sale goods which he knew or should have known to be dangerous and in failing to warn her of such danger. In support of her argument that the retailer knew of the danger, the plaintiff offers her testimony and her husband's that the store manager of the retailer told them that bottles had exploded on the premises before. This testimony was objected to as hearsay but was allowed in. We have reviewed the transcript and find that the hearsay objection was well taken and should have been sustained. See *Rutland v. Fuels, Inc.*, 135 Ga. App. 143 (3) (217 SE2d 167). Even though admitted over proper objection it has no probative value and does not support the plaintiff's position that the retailer had actual knowledge of the danger. *Houston v. Jefferson Standard &c. Ins. Co.*, 119 Ga. App. 729, 732 (168 SE2d 843) and cits. Nor do we believe that the evidence supports a finding of constructive notice on the part of the retailer. The plaintiff herself testified she saw nothing amiss with regard to the bottle. The evidence shows there was nothing apparently wrong with the bottle discoverable through the sense of sight or of touch; not only does this evidence fail to show that inspection would have disclosed a defect, but it also shows that inspection would *not* have done so. *Shepherd v. Whigham*, 111 Ga. App. 274, 277 (141 SE2d 583). The plaintiff's evidence having failed to show actual or constructive notice of the danger, there was no breach of the duty to use ordinary care imposed upon the retailer by Code §

105-401.

2. The appellant argues that her evidence was sufficient to the connection between the appellee-bottler, Atlanta Coca-Cola Bottling Company, to the exploding goods to allow the jury to find strict liability in tort as a basis for recovery. The language of Code Ann. § 105-106 is couched in terms of "the manufacturer"; we have carefully studied the transcript of evidence and find there to be a total lack of evidence linking this bottler with the exploding Coca-Cola. There was absolutely no showing that this bottler was the manufacturer of the defective goods. To overcome this deficiency the appellant offers several ingenious arguments, all of which we reject. The language of the answer and pre-trial order that "the Defendant the Atlanta Coca-Cola Bottling Company was at all times material hereto engaged in the business of bottling and distributing soft drinks, including Coca-Cola soft drinks" does not supply the missing connection between this defendant and the particular exploding bottle. Nor can this evidence be supplied by judicial notice that "it is well known and a matter of common knowledge in the community that they [Atlanta Coca-Cola Bottling Company] are the only bottlers and distributors of bottled Coca-Cola products in the metropolitan Atlanta area..." Code § 38-112. It is also urged that answers to interrogatories can be used to supply the evidence needed to connect the defendant-bottler to the exploding bottle. Under Code Ann. § 81A-133 (b) such answers "may be used to the extent permitted by the rules of evidence." While there are no Georgia cases on point, we are persuaded by the interpretation of the comparable federal rule that answers to interrogatories are not considered evidence unless introduced as such at the trial. Heilig v. Studebaker Corp., 347 F2d 686; Montgomery Ward & Co. v. Fotopoulos, 32 FRD 333; Patterson Oil Terminals, Inc. v. Charles Kurz & Co., 7 FRD 250; Bowles v. Safeway Stores, Inc., 4 FRD 469; Zamora v. New Braunfels Independent School District, 362 FSupp. 552, 554. The interrogatories here in question were not introduced and thus are not considered as evidence in this case.

3. The appellant argues that her case against the retailer and the bottler should have gone to the jury on the

theory of res ipsa loquitur. The elements of doctrine are: (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. See *Richmond County &c. Authority v. Haynes,* 121 Ga. App. 537, 541 (174 SE2d 364). As against the bottler in an "exploding bottle case," there must be some evidence that the company bottled the particular drink and delivered it to the retailer for ultimate consumption by the purchaser. See *Albany Coca-Cola Bottling Co. v. Shiver,* 63 Ga. App. 755 (2), 759 (12 SE2d 114). This evidence supplies the necessary "control" element of res ipsa loquitur noted supra. As we have discussed there is no evidence that the defendant-bottler here ever had any control over or connection with the bottle which injured the appellant. Before res ipsa loquitur is applicable, the act must speak not only of negligence, but of negligence on the part of the defendant. *Payne v. Rome Coca-Cola Bottling Co.,* 10 Ga. App. 762, 764 (73 SE 1087). The appellant's lack of evidence in this regard must result in affirming the directed verdict on the res ipsa theory of recovery against the bottler.

This leaves only the issue of res ipsa's applicability against the retailer. While a showing of "control" does not require the exclusion of every possible cause of injury other than the defendant's negligence than by some other cause. ". . . [T]he evidence need not be conclusive, and only enough is required to permit a finding as to the greater probability." *Macon Coca-Cola Bottling Co. v. Chancey,* 216 Ga. 61, 69 (114 SE2d 517). Here there was no evidence that the retailer's actions with regard to the bottles resulted, to a greater probability, in the explosion. The status of the plaintiff's suit under a res ipsa loquitur theory is that she alleges "control" over the bottle by the retailer and some as yet unidentified bottler; upon this basis it is urged that a "shifting the burden of proof" theory be adopted of res ipsa loquitur which would require the retailer to come forward and prove its exercise of reasonable care with regard to the bottle. Such a theory has been accepted, insofar as we can determine, in but two

jurisdictions. Nichols v. Nold, 174 Kan. 613 (258 P2d 317); Loch v. Confair, 372 Pa. 212 (93 A2d 451). We are persuaded however that the adoption of such a theory of res ipsa loquitur in this state would eliminate the necessary element of "control" in application of Code § 38-123 and compel the defendant to supply evidence necessary to the plaintiff's case. See Joffre v. Canada Dry Ginger Ale, Inc., 122 Md. 1 (158 A2d 631). In reaching this decision not to adopt the reasoning of the Nichols and Loch cases, supra, in Georgia, we are not unmindful of the criticism of a most eminent commentator: "The reasoning in these cases [Nichols and Loch] as to the meaning of 'exclusive control' is not very convincing; and they are quite evidently deliberate decisions of policy, seeking to compensate the plaintiff and to require the defendants to fight out the question of responsibility among themselves." Prosser, The Fall of the Citadel, 50 Minn. L. Rev. 791, 847. We reaffirm the need for a plaintiff relying on res ipsa loquitur in this state to offer some evidence which shows the "greater probability" of the defendant's negligence in order to satisfy the "control element" of the theory. See *Kennedy v. Friedman,* 123 Ga. App. 105 (179 SE2d 566), reversed on other grounds, 227 Ga. 722 (182 SE2d 761).

4. The directed verdict in favor of the appellee-retailer being erroneous as to the warranty theory of recovery and the directed verdict being correct as to the bottler, the judgment in this case is

*Affirmed in part and reversed in part. Quillian and Webb, JJ., concur.*