256.   GEORGIA RAILWAY AND ELECTRIC CO. *v.* BAKER.

1. It is error to allow a witness in an action brought to recover damages for an insult, alleged to have been given on a street-car, to testify as to conduct of the conductor subsequent to the transactions alleged in the petition, and disconnected therewith. An objection to such testimony, that it was irrelevant and inadmissible, should have been sustained.

2. While reasonable latitude of expression must be allowed a trial judge in ruling on the admissibility of evidence, still the immediate and positive affirmation by the court of a statement of counsel, that a given fact (not relevant to the issues) would be evidence of discourtesy, and which could be well understood by the jury as an expression of an opinion as to the effect of the testimony, was error.

3. It was error, in instructions to the jury, for the court to charge that the Supreme Court had passed upon the fact that the things set out in

the declaration made a case in court, and especially where, as a matter of fact, the particular case submitted had not been to the Supreme Court.

4. It was error to charge the jury that if the words and actions of the defendant's servant were such as to insult and annoy the *plaintiff*, and to *worry her*, and humiliate her, she would be entitled to damages. There can be no recovery for annoyance and worry. And the jury should also have been instructed that the facts and circumstances should not only have been such as did humiliate and insult the plaintiff, but such as would reasonably tend to humiliate any person in similar circumstances. The damages recoverable for tort, in this State, are restricted to injuries to person, property, and reputation.

5. It is error, after giving in charge section 3906 of the Civil Code, and without any other or further instructions as to the measure of damages, to charge the jury that this section would be the rule under which the jury would assess damages, in case they found the defendant liable. In every case the jury should be properly instructed as to the measure of damages applicable to the facts of the particular case.

6. While the conductor of a common carrier is clothed with police power, that fact affords no immunity to the carrier for damage resulting from his wrongful or illegal discharge of his duty, either as servant of the company or under color of the police power delegated to him by law. Consequently it was not error for the court to refuse a request to charge that the defendant was not liable for its conductor's acts in carrying out the law requiring the separation of white and colored passengers; the request being only a partially correct statement of the law.

7. It is error for the court to omit to charge the principles of law applicable to proper contentions of either party to a cause, where such contentions are authorized by the pleadings and are sustained by testimony, and thus become issues in the case.

Action for damages, from city court of Atlanta—Judge Calhoun. January 28, 1907.

Argued April 1,—Decided May 9, 1907.

*Rosser & Brandon, Walter T. Colquitt,* for plaintiff in error.
*Burton Smith, J. A. Branch,* contra.

RUSSELL, J. Mrs. A. L. Baker recovered a verdict for $775 against the Georgia Railway and Electric Company. The defendant company moved for a new trial, and excepts to the judgment denying and overruling the motion. There are twenty-one grounds of the amended motion. But as the decision of some of them is determinative of the merits of the question involved, it will not be necessary to pass upon all of these numerous assignments of error.

Mrs. Baker sued (in the language of her declaration) for an-

53

noyance, humiliation, mortification, and insult. No attempt was made to prove any special damages. The case proceeded upon her right to recover whatever actual damages she sustained to her feelings, and whatever vindictive damages, if any, the circumstances might authorize the jury to assess. It appears, from the evidence of the plaintiff, that Mrs. Baker was under treatment from a physician, to whose office she went at stated intervals; that she went to the office of the physician from her home, a distance of about a mile and a half, unaccompanied, that on the day in question she had been to the office of the physician, and walked back from his office, something more than two blocks, to take the car; that her husband, at the telegraph office, and her brother, at a wholesale house, were at work within less than one hundred yards of where she passed along to take the car; that she got on the car and sat down on one of the rear seats, set apart for the use of colored passengers, and which she knew to be set apart for the use of colored passengers; that she was too sick to move forward while the car was in motion; that the conductor went to her soon after the car started, and said, "Move up to the front, please;" that she paid no attention to this request and made no response to the conductor; that the conductor shortly afterwards went to her again and requested her to move up to the front; whereupon she told him that she was too sick to move while the car was in motion, but that she would move when it stopped; that the conductor came to her again and requested her to move, and threatened to have her arrested if she did not move; that the car stopped again after this at Mitchell and Whitehall streets, and she did not move up while it was stopped; that after this time she heard the conductor, upon the back platform of the car, remark to another man in uniform, "Damn her, if she don't move I am a good notion to throw her through the window;" that she did not move at any of the subsequent stops of the car until it had become practically filled with people and had traveled about a mile, where some negro passengers got on; which necessitated her moving to the extreme front of the car in order to reach a vacant seat, all the other places, in the meantime, having been filled up by passengers at the various stops of the car. The foregoing presents the salient features of the case, as testified to by the plaintiff. No other witness testified as to the cir-

cumstances of the transaction, except the defendant's conductor, whose testimony was materially in conflict with that of the plaintiff, but which, having been disregarded by the jury, will not be considered by us.

The plaintiff in error insists that the verdict is excessive, and a new trial ought to be granted; that the most that the plaintiff ever claimed was that the conductor had requested her, two or three times, to move, which requests she disregarded, and kept her seat until she was forced to move by the advent of the negroes, after the car had traveled more than a mile; that the oath which she quoted was not addressed to her, but to some person outside of the car, on the back platform, and not intended for her ears at all. There is some force in the argument of counsel for the plaintiff in error, that even conceding that the defendant's conductor swore falsely when he denied the use of the oath, and conceding that the plaintiff, in her excited and nervous condition and at her comparatively remote distance from the conductor, did not misunderstand what he said, still, the fact remains that the remark was not addressed to her, and was not intended for her hearing; and it is most probable, as suggested, that if it had been uttered in a tone of voice loud enough to warrant the inference that it was intended to be heard by her, the remark would have been resented by the other passengers on the car. Although a verdict for $775, under the evidence disclosed by this record, does seem to us rather large, still our obligation to recognize the right of the jury to assess the damages in every such case is so strong, and our regard for the right of passengers to protection from insult or abuse is so profound, that we would be extremely reluctant to set aside this verdict upon the ground that it is so excessive as by its very amount to show that the finding was the result of bias, prejudice, or other improper influences. We are not prepared to say that we would do so were this the only question in the case. For reasons hereafter stated, it is not necessary that the question of amount be passed upon. Upon another trial, in which the errors now complained of will doubtless not be again committed, the jury can determine not only liability, but amount. While any one of the various assignments of error certified by the trial judge might of itself be considered a harmless error, taken all together it must be apparent, from the general countenance

of the case, that the defendant did not have a fair legal trial, and that the errors complained of probably induced the verdict rendered, and perhaps greatly contributed to increase the amount of the recovery. A brief review of some of the grounds of the motion will sustain this statement.

It is complained in the first and second grounds of the motion that the court permitted the plaintiff to testify that the conductor would not stop the car long enough for her to get her feet on the ground. The defendant objected to this evidence as irrelevant and immaterial, but the court overruled this objection. The following colloquy occurred in the presence of the jury. Plaintiff's attorney, combating the objection, said that "to hurry her before she alighted safely would be an evidence of discourtesy," and the court replied, "Yes, I will let it stay in." There was no allegation in the petition which authorized this evidence. The plaintiff's allegation of discourtesy concluded in the petition with the statement of acts on the car and before she proceeded to alight. The transaction complained of had closed. Discourtesy on one occasion can not be shown by proof of discourtesy on another occasion. To admit the evidence at all had necessarily the effect of adding weight to plaintiff's contention that the conductor had been discourteous to her on the occasion from which the suit arose, as against his contradictory evidence that no discourtesy was shown. The objection that the evidence was irrelevant and immaterial was well taken; and when the judge, in making his ruling, stated in immediate sequence, and almost in concert with the counsel for the plaintiff, that to hurry her before she alighted would be evidence of discourtesy, and that for that reason he would let the evidence stay in, the jury could not have failed to understand the language of the court, under the circumstances, as being an opinion expressed by the court on the evidence. This was a violation of section 4334 of the Civil Code.

The third ground of the motion is not fully approved by the trial judge, and for that reason will not be considered. Nor is it necessary to discuss the fourth and fifth grounds. In the sixth ground of the amended motion, as approved by the court, it is stated that counsel for the plaintiff argued before the court that the case then being tried had been to the Supreme Court, and that the Supreme Court had decided that in this declaration they

had a good case. And in the seventh ground complaint is made that the court, in charging the jury, emphasized this error and gave additional weight to it, as against the defendant, by stating that the Supreme Court had passed upon the fact that the things set out in the declaration made a case in court. At the time of the argument of plaintiff's counsel, the defendant asked a mistrial on account of the statement and argument complained of, upon the ground that it deprived the defendant of a fair trial, would inevitably affect the opinion of the jury, and could have no other effect than to bias the minds of the jury against the defendant. We are not prepared to say that the court should have granted a mistrial upon the statement made by plaintiff's counsel, but we are quite sure that the remark made was, in its tendency, prejudicial to the defendant's case, and that the court should have clearly and explicitly, at the time that his attention was called thereto, explained to the jury that they had no concern with what might have been the decision of the Supreme Court, that they should pay no attention to the remark made, and should receive the law only from the court, when it should thereafter be given to them in charge. So far as the language in the seventh ground is concerned, we are quite sure that the able trial judge was endeavoring to do what he should have done the day before,—trying to withdraw from the jury any impression which might have been created as to the decision of the Supreme Court referred to. Upon examination of the whole charge we are constrained to this opinion. But the language used, that "the Supreme Court passed upon the fact that the things set out in the declaration made a case in court," in view of all the circumstances of the case, was peculiarly unfortunate, and not suited for the purpose doubtless intended by the court. The effect of this language was to state broadly to the jury that the Supreme Court had said that the plaintiff had a case, and that it was only necessary, in order to recover from the defendant, to prove the physical facts set out in her petition. It tended to deprive the defendant of that fair and impartial trial before a jury to which every litigant is entitled. Its natural effect was to bias the opinion of the jury towards a decision that a recovery should be had, in order that they should obey and properly respect what they thought was the opinion of the Supreme Court; and as a matter of fact, though plaintiff's

husband's case had been taken to the Supreme Court (*Georgia Railway and Electric Co.* v. *Baker,* 120 *Ga.* 991), it appears from the record that this plaintiff's case had never been passed upon by that tribunal.

We think that the charge complained of in the eighth ground is too broad. It put too great a burden on the defendant, and made the effect on the plaintiff the test of the insult, without leaving the jury to pass upon the question of what would be an insult to a normal person of ordinary sensibility, under the facts and circumstances shown in the case; and it allowed plaintiff to recover if she was annoyed, whether she had reason to be annoyed and insulted or not. The language used by the court was as follows: "If you determine, from the evidence in the case, that the words, actions, etc., were such as to insult and annoy her, and to worry her and humiliate her, then you give her such damages as you think she is entitled to recover." As has heretofore been ruled by this court, in *Glenn* v. *Western Union Tel. Co.,* ante, 821, we are bound by the decision in *Chapman* v. *W. U. Tel Co.,* 88 *Ga.* 763, while we do not approve it. We think that the peace of mind, the feelings, and the happiness of every one should be guarded by giving recovery of damages for mental anguish or suffering, produced either intentionally or negligently. But the doctrine of the *Chapman* case, that only the body, reputation, and property of the citizen are protected by liability for damages on the part of the wrong-doer, is expressly affirmed in *Cole* v. *Atlanta & West Point R. Co.,* 102 *Ga.* 479, in which a right of recovery is sustained on the express ground that the allegations of the petition affirm a "wanton and inexcusable injury to [Cole's] person, viz., a flagrant attack directed towards his reputation."

The next ground of complaint which we will consider is the exception taken to the following charge of the court: "Now, in passing upon the question of damages, if you should find that the railway company is liable, I give you this law of our State: 'In every tort there may be aggravating circumstances, either in the act or the intention; and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff;' and that would be the rule under which you are to assess damages." We will consider this ground (which relates to the

court's giving section 3906 of the Civil Code in charge to the jury) in connection with the next succeeding ground, in which complaint is made that the court gave no measure to the jury by which they could estimate the plaintiff's damages in case of recovery, except section 3906 of the Civil Code. While it was not erroneous to submit the principle contained in this section, it was error on the part of the court to instruct the jury that this section would be the rule under which they were to assess damages. It was a clear expression of opinion on the part of the court that there were aggravating circumstances in the case being tried, and that additional damages should be given, and withdrew these questions from the jury by virtually saying to them that if they believed the plaintiff was entitled to recover at all, damages should be given, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff; and this without anywhere having instructed the jury as to any measure of the original damages to which the proposed addition, arising from aggravation, should be made.

We think too that it was error for the court to charge the jury (though it was no doubt due to inadvertence, and perhaps thus understood by the jury, and consequently harmless) that they would be governed by the facts as they knew them to be, and heard them from the stand. The court, doubtless, intended to say, the facts as the jury knew them from hearing them from the stand.

*Judgment reversed.*