35117.   BURNS *v.* COLONIAL STORES, INC., *et al.*

DECIDED JUNE 24, 1954—REHEARING DENIED JULY 27, 1954.

*James R. Venable, Hubert Morgan,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Ernest P. Rogers,* contra.

NICHOLS, J. 1. Although the plaintiff has abandoned the general grounds of his motion for a new trial, the defendants contend that the evidence was not sufficient to have authorized a verdict for the plaintiff, and hence that the errors assigned in the special grounds of the motion, pertaining to the charge of the court, could not have been prejudicial and need not be considered. The defendants insist that the circumstantial evidence was insufficient to show that the meat, rather than any of the other four ingredients of the goulash, was adulterated and unfit for human consumption. But there is some evidence which points to the meat as the probable cause of the food poisoning suffered by the plaintiff and his family.

The plaintiff's wife testified that the plaintiff's mother fed a small portion of the raw meat to one of the plaintiff's three cats on Saturday night while the meat was being unwrapped and placed in the refrigerator. After describing the Sunday dinner, she further testified: "I observed the cat that ate the meat after then. [It is not clear whether she meant 'after the cat ate the meat' or 'after dinner.'] I noticed the cat on Sunday morning. It acted peculiar; it was very sick. Of course we gave no thought to the matter in connection with the meat, but it was very sick and vomited and acted peculiar and I didn't notice it after that. I was too busy doing other things. . . After the meal, the goulash was fed to the two dogs and the remainder to the cats. I did not see the other cat and I'm sure it did not

come up and eat any more. I just saw two cats and two dogs." The testimony of the other witnesses was in conflict as to how many cats ate the raw meat and how many ate the left-over goulash. No other witness observed any of the cats sick before the dinner on Sunday. But the testimony of the plaintiff's wife, as above set out, was sufficient to make an issue as to whether the meat alone was contaminated, and the verdict for the defendants was not demanded by the evidence.

"A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Sappington v. Bell,* 115 *Ga.* 856 (1) (42 S. E. 233); *Reaves v. Columbus Electric &c. Co.,* 32 *Ga. App.* 140 (122 S. E. 824).

The defendants also insist upon the presumption that a claim is not well-founded, where the plaintiff had certain and satisfactory evidence in his power but relied upon weaker or inferior evidence, since some of the raw ground beef remained unused after the preparation of the Sunday dinner of goulash and no explanation of its disposition was made. However, this presumption, as set out in Code § 38-119, is a presumption of fact and not of law; it is to be applied by the jury, and was submitted to them by the court in his charge.

2. The first special ground of the plaintiff's motion for a new trial, in which error is assigned on the court's failure to charge the principle of comparative negligence, is incomplete in that it fails to show that such an issue was raised by the pleadings and the evidence; and so will not be considered.

3. The court did not err in charging to the effect that the particular act of negligence alleged in subparagraph (f) of the plaintiff's allegations of the defendants' negligence did not constitute negligence per se. This subparagraph purports to show a violation of Code § 105-1101, which provides: "Any person who knowingly or carelessly sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or his family, shall be liable in damages for such injury." The liability described by this section is simply the common-law liability for

injury to another through negligence, as a matter of fact, and a "violation" of this section, which refers to private rights and based on common-law principles, is not negligence per se. *Donaldson* v. *Great Atlantic & Pacific Tea Company*, 186 *Ga.* 870 (199 S. E. 213, 128 A. L. R. 456).

4. As contended in the last two special grounds of the motion for a new trial, the court erred in charging the jury to the effect that the defendants could not be found to have been negligent as a matter of law in selling adulterated food in violation of the provisions of Code § 42-109, if the defendants had taken a guaranty from the wholesaler that the meat was not adulterated, as provided for by Code § 42-115. The latter section provides, in part: "No dealer shall be prosecuted under the provisions of this title when he shall establish a guaranty signed by the wholesaler, jobber, manufacturer, or other party residing in this State, from whom he purchases such articles, to the effect that the same are not adulterated or misbranded within the meaning of this title, designating them."

This section was construed as follows in the *Donaldson* case, supra: "Under this section a dealer selling food which is adulterated within the meaning of the statute would not violate its provisions, and therefore would not be guilty of negligence per se, if he had obtained the prescribed guaranty; but the guaranty would not relieve him from the liability referred to in section 105-1101, if he is negligent as a matter of fact, in selling unwholesome food by the use of which another is injured. It follows that section 42-115 merely creates an exception to the statute in favor of those who obtain and establish the guaranty; and the plaintiff in this case was not required to negative such exception in her petition, its existence in a particular case being a matter for defense."

But this defense to the charge of negligence per se in violating Code § 42-109 was raised neither by the pleadings nor by the evidence in the present case. "A charge is objectionable which states general principles correctly, but which are nevertheless not applicable to the facts as proven. The instructions should always be given, in reference to the evidence in the particular case." *Gorman* v. *Campbell*, 14 *Ga.* 137. "No hypothesis which lies beyond the range of all the evidence should be given in

charge to the jury. Mischief often results from a disregard of this rule, inasmuch as the jury will naturally conclude that the judge sees in the evidence some ground for any and every hypothesis which he submits to them for consideration." *Richmond & Danville R. Co. v. White & Co.*, 88 *Ga.* 805, 818 (15 S. E. 802). "Where instructions are given that are not warranted by the evidence and are calculated to mislead and confuse the jury, the error requires a new trial." *Central Georgia Power Co. v. Cornwell*, 139 *Ga.* 1 (76 S. E. 387, Ann. Cas. 1914A, 880). Also see *Perry v. Hodgson*, 168 *Ga.* 678 (148 S. E. 659), reversing s. c., 37 *Ga. App.* 314 (140 S. E. 396).

Although the defense of having obtained a guaranty of the purity of the meat was not claimed by the defendants, its submission to the jury in the charge of the court may have given the defendants the benefit of it, against the only allegations of negligence which the plaintiff sustained by proof; for there was no evidence that the defendants had knowledge of the unwholesomeness of the meat or were negligent, as a matter of fact, in its preparation and sale. It is apparent from the record that this charge could probably have misled the jury, and so was error requiring the grant of a new trial.

*Judgment reversed. Felton, C. J., and Quillian, J., concur.*