A98A0707. CHAMBLEY et al. v. APPLE RESTAURANTS, INC.
(504 SE2d 551)

Judge Harold R. Banke.

The underlying case arose when Michelle Chambley was dining at a restaurant with her husband. While eating the Sante Fe chicken salad prepared on the premises by employees of Apple Restaurants, Inc. d/b/a Applebees ("Apple"), Chambley suddenly noticed an unwrapped condom mixed in with the other ingredients.[1] Chambley immediately reported the incident to the manager and hastily left with the remainder of the salad in a container. After arriving home, she became upset, repulsed, nauseated, and began experiencing emotional and physical problems. Chambley sought medical attention from Dr. Keith Parmer for gastric distress and other stomach disorders and later saw Dr. Richard Hark, a psychologist, to help her cope with panic attacks, depression and humiliation caused by the inci-

---

[1] This particular salad is mixed by hand at the restaurant just prior to serving. It consists of a combination of six ounces of premixed salad, three ounces of Mexi-Ranch dressing, chicken strips, tortilla strips, and cheddar-jack cheese. All of the ingredients are thoroughly shaken and mixed together.

dent. Chambley sued Apple, the owner of the restaurant, for negligence and breach of implied warranty of merchantability. Her husband asserted a loss of consortium claim. Upon finding there was no physical injury resulting from impact with the condom, the trial court granted summary judgment on all counts. *Held*:

1. Chambley contends that she satisfied the requirements of the Georgia "impact" rule because she made physical contact with a salad contaminated by a condom and subsequently suffered a physical injury as a result of that impact.

Under the so-called "impact rule" in a claim concerning negligent conduct, "recovery for emotional distress is allowed only where there is some impact on the plaintiff and that impact must be a physical injury." *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). Chambley asserts that a jury must determine whether she sustained the requisite "impact" and resulting physical injury which would allow her to recover damages from Apple for negligently serving her adulterated food that caused both physical and psychological injuries. See *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 665 (2) (A) (386 SE2d 146) (1989). We agree.

This case is controlled by *Whited v. Atlanta Coca-Cola Bottling Co.*, 88 Ga. App. 241, 246 (76 SE2d 408) (1953), a case which closely parallels the facts here. In *Whited*, a consumer who drank part of beverage before discovering a dead bug inside his drink bottle did not have to prove actual contamination of his drink or actual physical contact with the dead bug to avert summary judgment. Id. at 248 (2). See OCGA § 26-2-22.

This holding comports with the subsequently enacted Georgia Food Act (OCGA § 26-2-20 et seq.) in which the legislature plainly intended to protect Georgia consumers from defective, contaminated food products. See OCGA § 51-1-23. To effectuate that intent, the legislature adopted a broad definition of the term adulterated food which clearly reaches the facts here. "A food shall be deemed to be adulterated if: (1) it bears or contains any poisonous or deleterious substance which may render it injurious to health." OCGA § 26-2-26.

Chambley testified without contradiction that after she consumed part of the salad, she discovered an unwrapped condom and almost immediately experienced various digestive problems which necessitated medical treatment. Whether this salad was "adulterated" within the meaning of the statute is a disputed question of fact. Unlike the dissent, we refuse to unnecessarily weaken legislative protection of consumers so that restaurants who serve customers hidden, disgusting objects, as here, are protected as long as the customer does not actually eat the object or the object subsequently tests benign. To encourage restaurants to avoid their statutory duty to consumers by serving adulterated food in blatant violation of the

Georgia Food Act, then allowing restaurants to escape liability because the consumer's physical reaction appears to have been psychological in origin simply cannot be the law. See *Whited*, 88 Ga. App. at 246. Therefore, we find that a jury must decide whether eating part of a salad containing a concealed, unwrapped condom is sufficient physical contact under the impact rule to permit recovery for damages. Similarly, a jury must determine whether Chambley's reaction of vomiting and becoming nauseated shortly after ingesting the salad constituted a physical injury within the meaning of our law. See *OB-GYN Assoc.*, 259 Ga. at 668 (2) (C). Compare *Posey v. Med. Center West*, 184 Ga. App. 404, 405 (361 SE2d 505) (1987) (impact rule precluded recovery against hospital by parents of child struck by vehicle); *Ford v. Whipple*, 225 Ga. App. 276 (483 SE2d 591) (1997) (impact rule foreclosed recovery by uninjured child passenger for fright and apprehension absent any physical injury). Notwithstanding the dissent's claim to the contrary, *Ford* is not "analogous," and neither requires nor authorizes a different result. In *Ford*, unlike here, the plaintiff expressly stated that she suffered no physical, psychological, or emotional injuries as a result of the defendant's wrongful conduct. Id.

Finally, we note that Apple offered no evidence that the salad was not at all times in the possession and control of the restaurant and its employees. Condoms do not just fall into salads, and the restaurant offered no explanation for its presence. Certainly the act here involved some intent, despite the fact that the plaintiffs do not allege any maliciousness. Had that issue reached a jury and a jury determined that the condom was intentionally or maliciously placed there by an employee, Chambley should have been able to recover for mental pain and suffering even absent a physical injury. *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (2) (B) (216 SE2d 776) (1975). See *Ryckeley*, 261 Ga. at 828.

2. In light of the above holding, we need not reach the remaining enumeration of error.

*Judgment reversed. McMurray, P. J., Pope, P. J., and Blackburn, J., concur. Eldridge, J., concurs specially. Beasley, J., concurs in part and dissents in part. Andrews, C. J., dissents.*

ELDRIDGE, Judge, concurring specially.

While I concur entirely with the majority, I feel that several factors should be further developed.

This action was brought under theories of negligence and warranty and not intentional tort, although the plaintiff could have brought the action as an intentional tort, because an unused but unwrapped condom does not accidentally become mixed in chicken salad and served up to a patron without an intentional act that was

"malicious, wilful, or wanton." For purposes of damages, it is the nature of the conduct, i.e., malicious, wilful, or wanton, rather than the theory of recovery that authorizes the recovery of general damages for mental pain and suffering.

Mental pain and suffering are a form of general damages. OCGA §§ 51-12-1; 51-12-2 (a); 51-12-6. In *Westview Cemetery v. Blanchard*, 234 Ga. 540, 543 (2) (B) (216 SE2d 776) (1975), the Supreme Court stated: "[w]here there is a physical injury or pecuniary loss, compensatory damages include recovery for accompanying 'mental pain and suffering' even though the tortious conduct complained of is merely negligent. [Cits.]" This was an action against a cemetery for intentional disinterment of a body without first obtaining authorization, and damages under OCGA § 51-12-6 (formerly Ga. Code Ann. 105-2003) were sought in addition to special damages. The Supreme Court went on to hold: "[i]f 'mental pain and suffering' [are] not accompanied by physical injury or pecuniary loss, recovery is allowed only if the conduct complained of was 'malicious, wilful, or wanton.' *Montega Corp. v. Hazelrigs*, [229 Ga. 126 (189 SE2d 421) (1972)]. . . . The *Montega* test for recovery for a purely mental injury is essentially the same as the test for recovery for 'punitive damages.' See *Standard Oil Co. v. Mt. Bethel &c. Church*, 230 Ga. 341 (196 SE2d 869) (1973)." Id. at 544-545. Accord *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992).

In *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 666 (2) (A) (386 SE2d 146) (1989), the Supreme Court held: "[w]e take this opportunity to clarify our rule regarding impact and now hold that the impact which will support a claim for damages for emotional distress must result in a physical injury." Accord *Ryckeley v. Callaway*, supra at 828. "On the other hand, where the conduct is malicious, wilful or wanton, recovery can be had without the necessity of an impact. [Cit.]" Id. "[E]ven malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." Id. at 829. However, in this case the intentional misconduct was directed at the plaintiff, as one of the small group of patrons ordering chicken salad, although the employee may or may not have known which customer would receive it.

BEASLEY, Judge, concurring in part and dissenting in part.

I concur with the judgment of reversal on the negligence and loss of consortium claims but disagree with the analysis of the majority, which misapprehends some issues of fact and law. I respectfully dissent from the reversal of summary judgment on the breach of warranty claim.

1. *Regarding facts.*

(a) The majority's closing comment that a jury would be authorized to determine the condom was intentionally or maliciously placed there by an employee is unsupported by the record. Chambley and her husband repeatedly represented in the court below that they did not allege any employee of defendant intentionally or maliciously put the condom in the salad; they simply claimed negligence, i.e., that the offending substance found its way into the salad through an employee's failure to assure the salad remained unadulterated. In its summary judgment order, the court expressly relied upon this representation in reaching its conclusion. The majority's gratuitous suggestion to the contrary simply blurs the clear contours of the case and may confuse it in the trial court.

(b) Despite what the majority relates, Chambley was not immediately sick. "When did I get sick? It was when I got home." Only after gathering up the salad in a container, returning home, and thinking about the incident did she become nauseated and vomit.

(c) The majority does not state that Chambley had the State Crime Lab test the salad, which test found no contaminants from the condom. Plaintiffs did not challenge nor attempt to contradict this finding.

2. *Regarding law.* OCGA § 26-2-26 (1) and (2) define adulterated food to include, inter alia, that which "contains any poisonous or deleterious substance which may render it injurious to health . . ." and that which "contains any added poisonous or added deleterious substance which is unsafe. . . ." OCGA § 26-2-22 (1) prohibits the sale of any food that is adulterated. OCGA § 51-1-23 expressly establishes civil liability: "Any person who knowingly or negligently sells unwholesome provisions of any kind to another person, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or to his family, shall be liable in damages for such injury."

Chambley has shown evidence to support a potential jury finding of liability under this statute. Chambley used food which was "unwholesome" in that it contained the "defect" of being adulterated. OCGA § 51-1-23. It was adulterated because it "contained" a "deleterious substance which rendered it injurious to health" or an "added deleterious substance which is unsafe." OCGA § 26-2-22 (1), (2). In 1863, if not before, the legislature established the public policy that negligent sellers of such "provisions" would be liable civilly for resulting "damages for such injury." OCGA § 51-1-23. Chambley presented evidence she suffered psychic injury that manifested itself in physical symptoms.

The later judicial creation of the "impact rule" in *Chapman v. Western Union Tel. Co.*, 88 Ga. 763 (15 SE 901) (1892), which requires

a physical impact resulting in a physical injury, did not involve adulterated food, and no subsequent case citing or refining this rule has attempted to apply it to OCGA § 51-1-23 or to adulterated foods. See *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992); *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 665-666 (2) (A) (386 SE2d 146) (1989). At least five factors indicate that the legislature did not intend the "impact rule" to apply to actions under OCGA § 51-1-23.

(a) OCGA § 51-1-23 does not limit the injury to that resulting from a physical impact. It does not preclude liability for injury where the bridge between the impact ("use") and the injury was psychic, "psychic" meaning that the user saw the unwholesomeness or defect and, based on what she saw, ascribed such a repulsive or horrific meaning to it that it made her physically sick. It is the effect of the defect on the person who uses it for which the seller is liable, so long as the injury was proximately caused by the negligent act. That distinguishes *Ford v. Whipple*, 225 Ga. App. 276 (483 SE2d 591) (1997), which did not involve food.

(b) Nor does the statute limit the types of recoverable injuries to physical injuries and to mental injuries that follow physical injuries. The general language of the statute includes all injuries or damages resulting from the use of the defective food, including mental distress which results in physical symptoms.

(c) OCGA § 51-1-23 relates to the Georgia Food Act (OCGA § 26-2-20 et seq.), which sets standards for those items which constitute food, something that is taken into the body and so has great potential for harm to the body. The Act is now in the title covering food, drugs, and cosmetics, all products which are highly regulated because of their potential for harm to the human body.

(d) The legislature chose to give a broad definition to when "food shall be deemed to be adulterated." OCGA § 26-2-26. Since OCGA § 26-2-26 (2) includes food which "bears or contains any added poisonous or added deleterious substance which is unsafe within the meaning of Code Section 26-2-27,"[1] we must construe this to mean that there would be liability under OCGA § 51-1-23 from injury resulting from food which is not defective itself but which merely contains a defective item and is used. The term "deleterious" is not defined in the Georgia Food Act, but according to the dictionary means "hurtful, destructive, noxious, pernicious." Webster's Third New Intl. Dictionary, p. 596.

(e) The legislature provided for express statutory sanctions against those who sell such food. Statutory civil liability (indepen-

---

[1] The Code says "22-2-27" but that is obviously a typographical error and should be "26-2-27." There is no § 22-2-27; that chapter has to do with condemnation, and § 26-2-27 does designate what shall be considered "unsafe."

dent of common law), OCGA § 51-1-23; criminal liability, OCGA §§ 26-2-24 and 26-2-41; and allowing the commissioner to publish adverse court orders, OCGA § 26-2-39, are the teeth of the Act, designed to enforce the high standards set for protection of health. The statute even provides for injunctions. OCGA § 26-2-23.

The impact rule does not apply. Chambley's negligence claim survives summary judgment, which means the husband's derivative loss of consortium claim also survives.

3. The trial court should be affirmed with respect to the grant of summary judgment on the implied warranty of merchantability claim. The majority does not decide this issue but instead in effect remands the whole case for trial. This claim is a separate claim, not based on the cited statutes. "In order to recover on this warranty [Chambley] had to demonstrate that (1) it had been breached and (2) that [she] had sustained recoverable damages as the proximate result. [Cit.]" *Teledyne Indus. v. Patron Aviation*, 161 Ga. App. 596, 598 (2) (288 SE2d 911) (1982).

Defendant maintains that no warranty arose because Chambley did not pay for the salad, but "a warranty is implied upon a *contract* for sale and not solely upon the execution of the sale itself." (Emphasis in original.) *Fender v. Colonial Stores*, 138 Ga. App. 31, 32 (1) (A) (225 SE2d 691) (1976). Just as a contract for sale arises when a grocery store patron places the goods in her shopping basket (even though she could return the goods to the shelf and not buy them — see id. at 33-34), so a contract for the sale of restaurant food arises upon placing the order (even though the order could be canceled). See *Keaton v. A.B.C. Drug Co.*, 266 Ga. 385, 386 (1) (b) (467 SE2d 558) (1996) ("grasping the product and beginning to take the product from the shelf with the intent to purchase it" constitutes privity necessary for implied warranty); cf. *Ray v. Deas*, 112 Ga. App. 191, 192 (2) (144 SE2d 468) (1965) (restaurateur may be liable for breach of implied warranty of merchantability for serving food containing foreign substance that causes injury). Chambley presented evidence establishing the warranty and its breach.

Nevertheless, Chambley does not show recoverable damages caused by the breach. OCGA § 11-2-715 (2) (b) allows as damages in a breach of warranty action "[i]njury to person or property proximately resulting from any breach of warranty." Such damages are considered the same as those allowed under common law. *Alterman Foods v. G. C. C. Beverages*, 168 Ga. App. 921, 923-924 (310 SE2d 755) (1983). The common law does not afford mental distress damages in breach of contract actions. *Cheeley v. Henderson*, 197 Ga. App. 543, 547 (2) (398 SE2d 787) (1990) (where only cause of action was suit on contract, court properly entered summary judgment on prayer for mental distress damages), rev'd on other grounds, 261 Ga. 498 (405

SE2d 865) (1991); *Rogers v. Ga. Ports Auth.*, 183 Ga. App. 325, 329 (3) (358 SE2d 855) (1987) (damages for mental pain and suffering "are not compensable in an ex contractu action in the absence of fraud"); see *Woodward v. Naylor Motor Sales*, 14 UCC Rep. Serv. (CBC) 1269, 1274-1275 (VI) (Mich. Dist. Ct. 1974) (damages for mental distress are not available in breach of warranty action).

Since this is all plaintiff claims, in that the physical aspects were simply manifestations of the psychic injuries, she cannot recover for breach of the implied warranty. Summary judgment was proper on this claim.

The trial court correctly granted summary judgment on the breach of warranty claim but erred as to the negligence and loss of consortium claims.

ANDREWS, Chief Judge, dissenting.

This is not a case where the plaintiff claims a physical injury as a result of food poisoning, nor is it a case where the plaintiff claims to have been physically injured by the consumption of a harmful foreign object in otherwise good food. Here, the evidence is undisputed that the portion of the salad Chambley consumed was not physically contaminated or tainted by the condom found in the salad, and Chambley does not claim that she was injured by consuming the condom itself. What Chambley does claim is that she found a repugnant foreign object (a condom) in the salad, and that seeing and thinking about the condom in the salad she had been eating caused her such great emotional distress that she later became physically ill as a result of the continuing emotional distress.

These facts do not support Chambley's cause of action because there is no evidence of an impact resulting in a physical injury that could support her claim for emotional distress damages. *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 665-666 (386 SE2d 146) (1989); *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). Chambley makes no allegation of malicious, wilful, or wanton conduct by the defendant, Apple Restaurants. The complaint alleges that, by serving the salad with a condom in it, Apple Restaurants was: (a) negligent as a matter of law (per se) because it violated the provisions of the Georgia Food Act (OCGA § 26-2-20 et seq.) against selling adulterated food, and (b) negligent as a matter of fact under the provisions of OCGA § 51-1-23 for knowingly or negligently selling unwholesome food. *Donaldson v. Great A & P Tea Co.*, 186 Ga. 870 (199 SE 213) (1938). Under either allegation of negligence in the complaint, Chambley states a cause of action based on long-established principles of common law negligence. Id. at 871-879 (construing provisions of the former pure food and drug act similar to the present Georgia Food Act, and provisions of former Code § 105-1101 almost identical to the

current provisions of OCGA § 51-1-23). See also *Criswell Baking Co. v. Milligan*, 77 Ga. App. 861, 871-873 (50 SE2d 136) (1948); *Norris v. Pig'n Whistle Sandwich Shop*, 79 Ga. App. 369, 373-374 (53 SE2d 718) (1949); *Burns v. Colonial Stores*, 90 Ga. App. 492 (83 SE2d 259) (1954).

"In a common law negligence action, . . . the impact which will support a claim for emotional distress must result in a physical injury." (Punctuation omitted.) *Abernathy v. City of Albany*, 269 Ga. 88, 89 (495 SE2d 13) (1998), quoting *OB-GYN Assoc.*, 259 Ga. 663, 666. *Ryckeley*, 261 Ga. at 828. In *OB-GYN Assoc.*, the Supreme Court overruled the expansive impact rule stated in *Christy Bros. Circus v. Turnage*, 38 Ga. App. 581 (144 SE 680) (1928). In addressing the impact holding in *Christy Bros.*, the Supreme Court stated that the plaintiff in that case "was allowed to seek damages for emotional distress resulting from the impact of a circus horse's evacuating its bowels in her lap." *OB-GYN Assoc*, 259 Ga. at 665 (2) (A). In stating its expansive version of the impact rule, *Christy Bros.* further held that "[a]ny unlawful touching of a person's body, although no actual physical hurt may ensue therefrom, yet, since it violates a personal right, constitutes a physical injury to that person. [Cit.] The unlawful touching need not be direct, but may be indirect, as by the precipitation upon the body of a person of any material substance." Id. at 581 (2). Quoting the above holding by *Christy Bros.*, the Supreme Court overruled it and held that the holding constituted an improper expansion of the impact rule because it "reduces the requirement that there be some physical injury or at least an impact for the recovery of damages for emotional distress as a result of defendant's conduct to an absurdity." *OB-GYN Assoc.*, 259 Ga. at 666 (2) (A).

No doubt, the condom hidden in the salad was a repugnant sight and the source of great emotional distress for Chambley, especially given the fear that the condom may have been soiled or contaminated. Nevertheless, the evidence is undisputed that, no matter how offensive its appearance in the salad was, the condom was tested at Chambley's request by the State Crime Lab and was found to contain no contaminants. The condom itself was an uncontaminated foreign object in the salad, which did not impart any unwholesome physical qualities to the otherwise normal ingredients of the salad. Accordingly, Chambley cannot and does not claim that she was physically injured because she consumed food that was contaminated or unwholesome as a result of being mixed with a contaminated condom. Her sole claim is that, after seeing and thinking about the condom in the salad she was eating, she suffered great emotional distress and later became physically ill as a result of the continuing emotional distress.

On these facts, there is no evidence of any impact resulting in

physical injury sufficient to support a claim for emotional distress damages. The only impact Chambley alleges is that she made physical contact with the salad by eating a few bites of it before discovering the condom. But even if this constituted some bodily impact, there is no evidence that this impact resulted in a physical injury. The physical injury alleged by Chambley, resulting not from the impact but stemming from the emotional distress itself, is not sufficient. *Posey v. Med. Center-West*, 184 Ga. App. 404, 405 (361 SE2d 505) (1987).

This case is controlled by the Supreme Court's holding in *OB-GYN Assoc.* applying the Georgia impact rule in claims for damages for emotional distress in common law negligence cases. By overruling *Christy Bros.* in *OB-GYN Assoc.*, the Supreme Court determined that the plaintiff in *Christy Bros.*, who had horse manure negligently dumped in her lap, showed insufficient impact or physical injury to support a claim for emotional distress damages. Chambley has shown even less evidence of impact or physical injury than the plaintiff in *Christy Bros.* It follows that Chambley's claim for emotional distress damages and her husband's related consortium claim were properly dismissed on summary judgment by the trial court.

The majority's contention that this case is controlled by *Whited v. Atlanta Coca-Cola Bottling Co.*, 88 Ga. App. 241 (76 SE2d 408) (1953) is misplaced. In that case, the allegations and evidence, as construed in favor of the plaintiff, were that the plaintiff drank from a bottle of Coca-Cola containing the dead remains of a partially decomposed roach. The plaintiff alleged that the liquid he drank was putrid and unwholesome because of the decaying matter mixed with it, and that consumption of the liquid caused him to vomit and become physically ill in addition to suffering mental anguish. Id. at 242-244. Thus, the refusal to grant a nonsuit to the defendant in *Whited* was based on allegations and evidence that the plaintiff suffered a physical injury by the consumption of Coca-Cola contaminated with the decomposed remains of a roach. No such comparable injury was suffered by Chambley in the present case.

In the absence of any claims of wilful or wanton misconduct by the defendant, there is no reasonable basis for not applying the impact rule established in *OB-GYN Assoc.* to the emotional distress claim made in this food-related case. As the Supreme Court made clear in *Donaldson*, 186 Ga. at 871-879, allegations that a defendant has violated statutory provisions like the Georgia Food Act (OCGA § 26-2-20 et seq.) or OCGA § 51-1-23 state causes of action based on common law negligence. Common law negligence actions have traditionally limited recovery for psychological and emotional distress damages to cases where there has been a discernible physical injury. *Abernathy*, 269 Ga. at 88-89. Allowing purely subjective claims for

emotional distress damages, without any physical injury to provide an objective component by which to judge the claims, would open the door to potentially fraudulent emotional distress actions of all kinds. The impact/physical injury rule is designed to safeguard against the possibility of such fraudulent claims in common law negligence cases, whether food-related or not. Accordingly, I disagree with the conclusion reached in Judge Beasley's concurring opinion (Division 2) that the impact rule does not apply in this case.

As to Chambley's claim based on breach of an implied warranty of merchantability, I fully concur in Judge Beasley's dissenting opinion (Division 3) that the trial court properly granted summary judgment in favor of Apple Restaurants on this issue.

DECIDED JULY 16, 1998.

*York, McRae & York, Michael D. McRae, Robert T. Monroe*, for appellants.

*Hall, Booth, Smith & Slover, John E. Hall, Jr., Kevin P. Race*, for appellee.

