S99G1523. LEE et al. v. STATE FARM MUTUAL INSURANCE COMPANY et al.
(533 SE2d 82)

HINES, Justice.

We granted certiorari to the Court of Appeals in *Lee v. State Farm Mut. Automobile Ins. Co.*, 238 Ga. App. 767 (517 SE2d 328) (1999), to consider its determination that the mother, who was physically injured in the same automobile collision which took the life of her young daughter, could not recover for emotional distress from witnessing her daughter's injuries and death. We reverse, because under the circumstances in this case, the mother is allowed to pursue

a claim for the negligent infliction of emotional distress from witnessing the mortal injury to her child.[1]

The relevant facts are set forth by the Court of Appeals. Bridget Lee and her daughter sustained significant physical injuries in an automobile collision caused by an unknown hit-and-run driver. Lee witnessed her daughter's suffering, which ended with her daughter's death an hour later. State Farm Mutual Automobile Insurance Company and Allstate Insurance Company, Lee's and her husband's uninsured motorist carriers, paid the policy limits for the claim of the daughter's wrongful death. Lee filed suit to recover for her own physical injuries and for the emotional distress that she experienced from witnessing her daughter's suffering and death. Her husband sued for loss of consortium. State Farm intervened on its own behalf and Allstate defended in the "John Doe" name of the unknown motorist. The trial court entered summary judgment in favor of the defendants on Lee's claim for emotional distress. Based on *OB-GYN Assoc. of Albany v. Littleton*, 261 Ga. 664 (410 SE2d 121) (1991) ("*Littleton IV*"), and its statement of Georgia's impact rule, a majority of the Court of Appeals found that Lee's claim was not actionable and affirmed.

I. Georgia's Impact Rule – History, Current Law.

Georgia's impact rule is succinctly stated in *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992): "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury."[2] The doctrine has a long history with its origins in *Chapman v. Western Union Tel. Co.*, 88 Ga. 763 (15 SE 901) (1892), a case involving a plaintiff's unsuccessful attempt to recover damages from a telegraph company for mental pain and suffering resulting from the company's alleged failure to timely deliver a message to the plaintiff informing him of his brother's desperate illness. The *Chapman* court observed,

> So far as mental suffering originating in physical injury is concerned, it is rightly treated as undistinguishable from the physical pain. On ultimate analysis, all consciousness of pain is a mental experience, and it is only by reference back to its source that one kind is distinguished as mental and another as physical. So in cases of physical injury, the

---

[1] There is no claim for the intentional infliction of emotional distress.

[2] As *Ryckeley* notes, there is not the necessity of an impact when the alleged conduct directed toward the plaintiff is malicious, wilful or wanton. Id. at 828. See also *Westview Cemetery v. Blanchard*, 234 Ga. 540 (216 SE2d 776) (1975); *Sanders v. Brown*, 178 Ga. App. 447 (1) (343 SE2d 722) (1986).

mental suffering is taken into view. But according to good authorities, where it is distinct and separate from the physical injury, it cannot be considered.

Id. at 768.

Georgia's impact rule became prey to criticism soon after its inception. See, e.g., *Glenn v. Western Union Telegraph Co.*, 1 Ga. App. 821, 826 (58 SE 83) (1907); *Ga. R. & Elec. Co. v. Baker*, 1 Ga. App. 832, 838 (58 SE 88) (1907). And through the years, *Chapman* was distinguished and limited to exclude recovery only in actions of negligence by a defendant from which the plaintiff suffered neither monetary loss nor actual physical injury. *Mayer v. Turner*, 142 Ga. App. 63, 64 (3) (234 SE2d 853) (1977), citing *Montega Corp. v. Hazelrigs*, 229 Ga. 126 (189 SE2d 421) (1972); *Southern R. Co. v. Daughdrill*, 11 Ga. App. 603 (2) (75 SE 925) (1912). But, the impact rule in its current form was largely shaped by the *"Littleton"* cases, a series of four appeals in a parents' suit for wrongful death, loss of services, and the mother's mental suffering and emotional distress resulting from the allegedly negligent delivery of the parents' infant daughter and the child's death two days later. See *OB-GYN Assoc. of Albany v. Littleton*, supra (*"Littleton IV"*); *Littleton v. OB-GYN Assoc. of Albany*, 199 Ga. App. 44 (403 SE2d 837) (1991) (*"Littleton III"*); *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663 (386 SE2d 146) (1989) (*"Littleton II"*); *Littleton v. OB-GYN Assoc. of Albany*, 192 Ga. App. 634 (385 SE2d 743) (1989) (*"Littleton I"*). In *Littleton II*, this Court sought to clarify the Georgia rule regarding impact by pronouncing that "the impact which will support a claim for damages for emotional distress must result in a physical injury."[3] *Littleton II* at 666 (A). In so doing, the Court overruled *Christy Brothers Circus v. Turnage*, 38 Ga. App. 581 (144 SE 680) (1928), a case in which the plaintiff was allowed to seek damages for emotional distress resulting from the "impact" of an animal defecating in the plaintiff's lap. By *Littleton IV*, this Court stated unequivocally that any potential award of damages to the mother in the malpractice claim for her injuries was limited to compensation for any physical injury she suffered as a result of the alleged negligence and any mental suffering or emotional distress she sustained as a consequence of her physical injuries, but that any mental suffering or emotional distress that the mother suffered as a result of injuries to her child was not compensable.[4] See *DeKalb County v. Wideman*, 262 Ga. 210 (416 SE2d 498) (1992); *Goins v.*

---

[3] The Court also reiterated "that for a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury may not be physical." *Littleton II* at 667 (B).

[4] *Littleton IV* adopted footnote 1 from the Court of Appeals opinion in *Littleton III*.

*Tucker*, 227 Ga. App. 524, 526 (2) (489 SE2d 857) (1997). See also *Southern R. Co. v. Jackson*, 146 Ga. 243 (91 SE 28) (1916).

Thus, the current Georgia impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. It is plain that the last element is lacking in the case at bar. And the failure to meet any one of these requirements has proved fatal to recovery even in cases like the present in which the circumstances portend a claim of emotional distress. See, e.g., *DeKalb County v. Wideman*, supra. Consequently, there have been attempts to find theories of recovery within the confines of the present rule in order to avoid its sometimes harsh results. See, e.g., *Lee v. State Farm Mut. Automobile Ins. Co.,* supra at 770 (Blackburn, J., dissenting) and *Thomas v. Carter,* 234 Ga. App. 384 (506 SE2d 377) (1998), applying a "common force" rationale; *Chambley v. Apple Restaurants,* 233 Ga. App. 498 (504 SE2d 551) (1998), applying expansive views of "impact" and "physical injury."

II. The Impact Rule — Policy, Limitations, Benefits.

Numerous rules have been employed in other jurisdictions for determining recovery of damages for emotional distress. These rules run the gamut from variations of the impact approach, to analysis under a so-called "zone of danger,"[5] to a broader rule based on foreseeability of injury assessed by application of factors relating to proximity, direct observation, and relationship to the victim,[6] to the most expansive view of reasonable foreseeability of injury under general tort theory. See generally 86 CJS Torts, §§ 79-83; Annotation, Immediacy of Observation of Injury as Affecting Right to Recover Damages for Shock or Mental Anguish from Witnessing Injury to Another, 5 ALR 4th 833-851 (1981-1999). See also *Pieters v. B-Right Trucking*, 669 FSupp. 1463, 1466 (N.D. Ind. 1987); *Saechao v. Matsakoun*, 717 P2d 165, 168 (Or. 1986). Each rule, whether based upon a theoretical construct or upon purely policy considerations, is problematic, to some degree, in its integrity of reasoning or its pragmatic implications.[7]

---

[5] The "zone of danger" rule generally provides for recovery of damages for serious emotional distress from witnessing serious/fatal injury to a third person (usually a loved one) if the plaintiff (usually a relative) was within the range of physical peril from the defendant's negligence. *Littleton II* at 667 (C); *Pieters v. B-Right Trucking*, 669 FSupp. 1463, 1466 (N.D. Ind. 1987); *Saechao v. Matsakoun*, 717 P2d 165, 168 (Or. 1986).

[6] This test has its roots in the seminal California case, *Dillon v. Legg*, 68 Cal. 2d 728, 740-741 (441 P2d 912) (1968).

[7] In the more than three decades of dealing with its decision in *Dillon v. Legg*, the California courts have acknowledged the necessity of setting limitations on the recovery of bystander emotional distress based upon an analysis of reasonable foreseeability. In 1989, a majority of the California Supreme Court in *Thing v. La Chusa*, 48 Cal. 3d 644 (771 P2d 814)

There are three policy reasons traditionally given for having the impact rule and denying recovery for emotional distress unrelated to physical injuries. First, there is the fear, that absent impact, there will be a flood of litigation of claims for emotional distress. Second, is the concern for fraudulent claims. Third, there is the perception that, absent impact, there would be difficulty in proving the causal connection between the defendant's negligent conduct and claimed damages of emotional distress. See *Zell v. Meek*, 665 S2d 1048, 1050 (Fla. 1996); *Shuamber v. Henderson*, 579 NE2d 452, 455 (Ind. 1991); *Pieters,* supra at 1470.

These policy concerns have been criticized and even held to be wholly invalid in the context of a claim of negligent infliction of emotional distress. See, e.g., *Zell*, supra at 1050; *Shuamber,* supra at 455. The impact rule is also susceptible to the charge that it is arbitrary, but any rule seeking to circumscribe a defendant's liability to bystanders must necessarily involve a degree of arbitrariness. *Saechao,* supra at 170 (Warren, J., dissenting). However, the benefits of an impact rule are plain in that it provides a brighter line of liability and a clear relationship between the plaintiff's being a victim of the breach of duty and compensability to the plaintiff. *Saechao,* supra at 169. And a rule is not superior to its alternatives simply because it

---

(1989), addressed its concern about the breadth of liability under *Dillon v. Legg*. The court in *Thing* lamented that

> [t]he expectation of the *Dillon* majority that the parameters of the tort would be further defined in future cases has not been fulfilled. Instead, subsequent decisions . . . have created more uncertainty. . . . Little consideration has been given in post-*Dillon* decisions to the importance of avoiding the limitless exposure to liability that the pure foreseeability test of "duty" would create and towards which these decisions have moved.

(Emphasis supplied.) *Thing,* 48 Cal. 3d at 656. The California Supreme Court further stated that,

> [t]he *Dillon* experience confirms, . . . that "[f]oreseeability proves too much. . . . Although it may set tolerable limits for most types of physical harm, it proves virtually no limit on liability for nonphysical harm." Rabin, [Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment, 37 Stan. L. Rev. 1513, 1526 (1985)]. . . . In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

*Thing,* 48 Cal. 3d at 663-664. The court recognized that

> policy considerations justify restrictions on recovery for emotional distress notwithstanding the sometimes arbitrary result, and that the court has an obligation to establish those restrictions. . . . If the consequences of a negligent act are not limited an intolerable burden is placed on society. A "bright line in this area of the law is essential."

Id. at 664. The court discussed various limitations on the class of potential plaintiffs, including familial relationship to the physically-injured victim and direct involvement in the injury-producing event, and it concluded that "drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts." Id. at 666.

expands recovery if there is no connection between the nature of the damages and the reason for allowing the additional recovery. Id.

III. Georgia's Impact Rule — Application in this Case.

The circumstances of this case clearly invite this Court to reject the impact approach. However, as has been discussed, the impact rule, even with its shortcomings, is not without benefit. And certainly, it would be imprudent to abandon over a hundred years of Georgia precedent. What is more, we decline to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress. Nor will we resort to artifice to make recovery possible to the plaintiff in this case by recasting the claim of emotional distress or otherwise attempting to fit the case into the parameters of the current rule.

But this Court recognizes that the policy concerns behind our traditional impact rule are not extant in this case, and there is no meritorious reason in an appropriate and compelling situation to refuse to extend recovery for emotional distress to an incident in which the distress is the result of physical injury negligently inflicted on another. See *Shuamber*, supra at 455. The circumstance of this case is such an appropriate and compelling situation. When, as here, a parent and child sustain a direct physical impact and physical injuries through the negligence of another, and the child dies as the result of such negligence, the parent may attempt to recover for serious emotional distress from witnessing the child's suffering and death without regard to whether the emotional trauma arises out of the physical injury to the parent.[8] Id. at 456. This is in accord with the precepts of the impact approach and appropriately restricts recovery to those directly affected by the defendant's negligent act or omission. See *Alexander v. Scheid*, 726 NE2d 272 (Ind. 2000). Of course, the parent will be allowed to seek damages for the parent's own physical injuries and any mental suffering or emotional distress arising from those injuries. It will be for the finder of fact to determine whether the parent suffered emotional distress from witnessing the child's suffering and death apart from the grief which would naturally arise from a parent's loss of a child.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case for its consideration in light of this opinion.

*Judgment reversed and case remanded. All the Justices concur, except Sears and Hunstein, JJ., who concur specially.*

---

[8] To the extent that the *Littleton* cases, their predecessors, and progeny bar recovery for the parent's claim of emotional distress in circumstances like the present by requiring that the emotional distress stem from the parent's own physical injury, they will no longer be followed.

HUNSTEIN, Justice, concurring specially.

I agree with the majority that the mother in this case should be allowed to pursue a claim for negligent infliction of emotional distress she sustained from witnessing the injury and death of her child. Unlike the majority, however, I would not make it a prerequisite to recovery that the mother prove she herself sustained an "impact," i.e., physical injury, and thus reject the majority's endorsement of a position "that is distinctly the minority rule today." (Footnote omitted.) 3 Harper, James & Gray, The Law of Torts, § 18.4, p. 687 (2nd ed. 1986). Although Georgia has heretofore been one of the few states to refuse to recognize "bystander liability," other states have been far more progressive and thus have had several decades to evaluate the benefits and disadvantages of the various approaches applied by courts in this area of the law. Based on my review of foreign case law and learned treatises, I would endorse the majority rule, as derived from the seminal case of *Dillon v. Legg*, 441 P2d 912 (Cal. 1968), establishing foreseeability of emotional harm as the general test of liability. Dobbs, The Law of Torts, § 309, p. 840. In *Dillon*, the California Supreme Court ruled that in order to determine if a defendant owes a bystander a duty of care, the courts

> will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Dillon v. Legg*, supra at 920. See also Prosser & Keeton, The Law of Torts, § 54, p. 366 (5th ed. 1984), stating that the "bystander proximity" doctrine involves consideration of (1) physical proximity, i.e., the bystander's location in regard to the scene of the accident; (2) temporal proximity, i.e., the bystander's personal observation of the accident; and (3) relational proximity, i.e., the bystander's connection to the victim. The foreseeability rule, first proposed in the *Dillon* opinion, has since been modified and refined by many states, including California itself, which have followed its rationale to arrive at fair and pragmatic solutions to its application. See Dobbs, supra at § 309, p. 841. It is beyond the range of a special concurrence to define the parameters of the foreseeability rule this Court should apply in Georgia. It is sufficient to note that any reasonable version of the foresee-

ability rule is preferable to the repudiated, regressive impact rule adopted by the majority.

The majority cautions against an imprudent abandonment of over a hundred years of Georgia precedent. However, this Court, by unanimously accepting the proposition that emotional injuries due to witnessing a negligently-caused injury to a third person are compensable, has abandoned that law. Having made this important and long overdue decision, however, it behooves this Court not to misdirect the law into an imprudent approach that has been roundly rejected and criticized by our sister states. The majority opens the door to bystander liability only to limit recovery within the confines of the impact rule, a rule the majority readily admits is based on policy considerations widely recognized to be "wholly invalid." Majority Opinion, p. 587. The majority proposes to adopt the impact rule because it provides a "brighter line" for liability and foreseeability purposes. However, the impact rule also creates an irrational and indefensible distinction between injured and uninjured parents who witness a calamitous injury to a child.

We have the good fortune to be in a position to benefit from our sister states' three decades worth of experience in this area of the law. The majority's adoption of the impact rule is needlessly tentative and backwards-thinking in light of the practical knowledge and analysis available to us to evaluate the proper approach to bystander liability law. The modified foreseeability rule I propose this Court adopt is the tried and tested result of our sister states' experimentation. It is just as capable as the impact rule of providing a framework which "appropriately restricts recovery to those directly affected by the defendant's negligent act or omission," Majority Opinion, p. 588, and does so without creating an artificial barrier to recovery which serves only to foreclose relief to parties with genuine claims. Thus, while I concur fully in the majority's decision to allow a parent to attempt to recover for serious emotional distress from witnessing a child's suffering and death, without regard to whether the emotional trauma arises out of the parents' own physical injury, I cannot endorse the proposed minority impact rule. Instead, I would join the majority of states and adopt the foreseeability rule, which would allow the factfinder to make a case-by-case analysis of the facts applying the factors in *Dillon*, supra, in order to determine whether the defendant was liable for the breach of a duty of due care owed to the parent.

I am authorized to state that Justice Sears joins in this special concurrence.

DECIDED JULY 10, 2000.

*Lanham & McGehee, William C. Lanham, Clark H. McGehee,* for appellants.

*Allen & Associates, Twanda Turner-Hawkins, Cooper & Markarenko, Gary M. Cooper,* for appellees.